NO. 07-12-0036-CR

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL B

 OCTOBER 1, 2012

 MICHAEL ANTHONY FOSTER,

 Appellant
 v.

 THE STATE OF TEXAS,

 Appellee
 _____________________________

 FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY;

 NO. 1172868R; HONORABLE GEORGE GALLAGHER, PRESIDING

 Memorandum Opinion

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
 Before us is the second chapter of the prosecution of appellant,
Michael Anthony Foster. He was originally convicted of causing serious
bodily injury to a child and was sentenced to fifty years imprisonment. We
reversed that conviction because the State conceded error. Foster v.
State, 07-10-0030-CR, 2010 Tex. App. Lexis 6781 (Tex. App. -Amarillo Aug.
18, 2010, no pet.) (not designated for publication). That is, both we and
the State agreed with his argument that the trial court wrongfully denied
him his constitutional right to represent himself. Upon retrial, appellant
was again convicted, but sentenced to life in prison and assessed a $10,000
fine. Now appellant argues that the trial court erred in allowing him to
represent himself without affording him proper admonishments against doing
so and in increasing his punishment. We affirm.
 Issue 1 - Right of Self-Representation
 Having succeeded in obtaining a reversal of his first conviction due
to being denied a right of self-representation, appellant now contends that
the trial court failed to conduct a thorough inquiry to ensure that he
understood the "nature of the allegations against him, the potential range
of punishment, and many of the 'dangers and disadvantages of self-
representation.'" We overrule the issue.
 The State suggests that because the trial court re-appointed the
attorney who represented appellant in his first trial to assist him in his
second, the admonishments now sought by appellant were not required.
Walker v. State, 962 S.W.2d 124, 126 (Tex. App.-Houston [1st Dist.] 1997,
pet. ref'd) (so holding); Robertson v. State, 934 S.W.2d 861, 864 (Tex.
App.-Houston [14th Dist.] 1996, no pet.) (so holding); accord Sumrell v.
State, Nos. 05-09-00238&00239-CR, 2010 Tex. App. Lexis 6451, at *6-7 (Tex.
App.- Dallas August 10, 2010, pet. ref'd) (not designated for publication)
(so holding); but see, Grant v. State, 255 S.W.3d 642, 647 (Tex. App.-
Beaumont 2007, no pet.) (suggesting otherwise). Yet, that is not a matter
we need address for the record itself reveals that appellant's decision to
proceed was knowing, voluntary, and intelligent.
 Again, this is not appellant's first rodeo, as some would say. He had
been tried and convicted for the same crime. So too had he been sentenced.
 Thus, he had been afforded opportunity to witness a dress rehearsal of
what was to come. Matters such as the manner of proceeding, the nature of
the charges being tried, the presentation of and objection to evidence, the
nature and content of the prospective jury instructions, jury argument, and
the rather weighty punishment to which he was subject were all made known
to him before. To that, we add instances in the record indicating that he
knew to ask for assistance from his standby counsel at certain times. He
also knew that there were certain things that he could not handle himself
and, therefore, needed counsel to represent him, such as when he wanted to
appeal the trial court's denial of his writ of habeas corpus. Yet, despite
this experience and the trial court's repeated inquiries about whether he
wanted to actually proceed pro se, appellant said yes.
 It may be that appellant was not as versed in the law as an attorney
would have been. It may be that he did not have the experience of a
trained litigator or orator. It may be that an attorney would have done a
better job. Nonetheless, the totality of the circumstances before us are
enough to reasonably support the conclusion that he knew what he was doing
and that the decision to act on his own behalf was voluntary and
intelligent. Grant v. State, 255 S.W.3d at 647 (stating that we look to
the totality of the circumstances to assess whether waiver of counsel was
knowing, intelligent and voluntary).
 Issue 2 - Increase in Punishment
 After the jury found appellant guilty at his first trial, the trial
court sentenced him to fifty years confinement. At the conclusion of his
second trial, the court sentenced him to life imprisonment and assessed a
$10,000 fine. Because his second sentence was greater than the first, he
contends the trial court's action violated his due process rights. In
other words, he believes that the trial court retaliated against him for
successfully prosecuting an appeal of his prior conviction. We overrule
the issue.
 We find information presented at the second trial but omitted at the
first could reasonably justify the greater punishment. This is of import
because when a judge imposes a more severe sentence on a defendant after
retrial, the reasons for the greater punishment must appear in the record
and must be based on identifiable conduct on the defendant's part. North
Carolina v. Pearce, 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656
(1969). And, it is not necessary that the conduct occurred after the
original sentencing. Texas v. McCullough, 475 U.S. 134, 142, 106 S.Ct. 976,
89 L.Ed.2d 104 (1986).
 The additional and identifiable conduct alluded to above consisted of
appellant informing a CPS worker to "get the 'Fuck' off his property" and
that he "did not have the time to deal with his wife's Mental Health" or
his four "Fucking children" when the worker went to investigate the well
being of the children. At the time, the worker had told appellant that his
wife needed to undergo a psychological examination "immediately." The
statement uttered by appellant was quite telling given the nature of the
injuries to the child for which appellant was held responsible. They arose
from appellant's failure to care for his infant child. A paramedic found
the baby malnourished, dehydrated, lethargic, unresponsive, and limp while
in appellant's home. The infant's muscles had started to atrophy "to the
point that we could see bone structures . . . he was covered in a rash or
eczema." He was also wrapped in a blanket with his arms behind him.
Moreover, appellant initially refused to allow the child to be taken to the
hospital but eventually acquiesed when the medic insisted. Appellant's
other children appeared in relatively good health, however.
 These circumstances could suggest that appellant's rather wanton and
callous attitude was limited to the youngest child. But, given the
previously unheard evidence of appellant's outburst to the DPS worker, the
trial court could well have concluded that appellant's ill mindset
encompassed all his family. Allowing one child to suffer was bad enough.
But, discovering that a parent and spouse lacked time to "deal" with any of
his wards or wife and invoking the modifier he did to so describe those
children was new data that the trial court took care to disclose as
influencing his decision to levy a greater sentence. The trial court also
relied on the testimony of several witnesses that they would have assisted
appellant in caring for his family if he had asked for it allowing the
court to conclude that he was lying in his assertion that he was having
problems coping with his situation. We find no retaliation or
vindictiveness on the part of the trial court, only a decision that can be
justified by the record.
 Accordingly, the judgment is affirmed.

 Brian Quinn
 Chief Justice
Do not publish.