NO. 07-12-0036-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 1, 2012

_____

MICHAEL ANTHONY FOSTER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY;

NO. 1172868R; HONORABLE GEORGE GALLAGHER, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Before us is the second chapter of the prosecution of appellant, Michael Anthony Foster. He was originally convicted of causing serious bodily injury to a child and was sentenced to fifty years imprisonment. We reversed that conviction because the State conceded error. *Foster v. State,* 07-10-0030-CR, 2010 Tex. App. LEXIS 6781 (Tex. App. –Amarillo Aug. 18, 2010, no pet.) (not designated for publication). That is, both we and the State agreed with his argument that the trial court wrongfully denied him his constitutional right to represent himself. Upon retrial, appellant was again convicted, but

sentenced to life in prison and assessed a $10,000 fine. Now appellant argues that the trial court erred in allowing him to represent himself without affording him proper admonishments against doing so and in increasing his punishment. We affirm.

*Issue 1 – Right of Self-Representation*

Having succeeded in obtaining a reversal of his first conviction due to being denied a right of self-representation, appellant now contends that the trial court failed to conduct a thorough inquiry to ensure that he understood the "nature of the allegations against him, the potential range of punishment, and many of the 'dangers and disadvantages of self-representation.'" We overrule the issue.

The State suggests that because the trial court re-appointed the attorney who represented appellant in his first trial to assist him in his second, the admonishments now sought by appellant were not required. *Walker v. State,* 962 S.W.2d 124, 126 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd) (so holding); *Robertson v. State,* 934 S.W.2d 861, 864 (Tex. App.–Houston [14th Dist.] 1996, no pet.) (so holding); *accord Sumrell v. State,* Nos. 05-09-00238&00239-CR, 2010 Tex. App. LEXIS 6451, at *6-7 (Tex. App.–Dallas August 10, 2010, pet. ref'd) (not designated for publication) (so holding); *but see*, *Grant v. State*, 255 S.W.3d 642, 647 (Tex. App.–Beaumont 2007, no pet.) (suggesting otherwise). Yet, that is not a matter we need address for the record itself reveals that appellant's decision to proceed was knowing, voluntary, and intelligent.

Again, this is not appellant's first rodeo, as some would say. He had been tried and convicted for the same crime. So too had he been sentenced. Thus, he had been afforded opportunity to witness a dress rehearsal of what was to come. Matters such as the manner of proceeding, the nature of the charges being tried, the presentation of and

2

objection to evidence, the nature and content of the prospective jury instructions, jury argument, and the rather weighty punishment to which he was subject were all made known to him before. To that, we add instances in the record indicating that he knew to ask for assistance from his standby counsel at certain times. He also knew that there were certain things that he could not handle himself and, therefore, needed counsel to represent him, such as when he wanted to appeal the trial court's denial of his writ of habeas corpus. Yet, despite this experience and the trial court's repeated inquiries about whether he wanted to actually proceed *pro se*, appellant said yes.

It may be that appellant was not as versed in the law as an attorney would have been. It may be that he did not have the experience of a trained litigator or orator. It may be that an attorney would have done a better job. Nonetheless, the totality of the circumstances before us are enough to reasonably support the conclusion that he knew what he was doing and that the decision to act on his own behalf was voluntary and intelligent. *Grant v. State*, 255 S.W.3d at 647 (stating that we look to the totality of the circumstances to assess whether waiver of counsel was knowing, intelligent and voluntary).

*Issue 2 – Increase in Punishment*

After the jury found appellant guilty at his first trial, the trial court sentenced him to fifty years confinement. At the conclusion of his second trial, the court sentenced him to life imprisonment and assessed a $10,000 fine. Because his second sentence was greater than the first, he contends the trial court's action violated his due process rights. In other words, he believes that the trial court retaliated against him for successfully prosecuting an appeal of his prior conviction. We overrule the issue.

3

We find information presented at the second trial but omitted at the first could reasonably justify the greater punishment. This is of import because when a judge imposes a more severe sentence on a defendant after retrial, the reasons for the greater punishment must appear in the record and must be based on identifiable conduct on the defendant's part. *North Carolina v. Pearce,* 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). And, it is not necessary that the conduct occurred after the original sentencing. *Texas v. McCullough,* 475 U.S. 134, 142, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986).

The additional and identifiable conduct alluded to above consisted of appellant informing a CPS worker to "get the 'Fuck' off his property" and that he "did not have the time to deal with his wife's Mental Health" or his four "Fucking children" when the worker went to investigate the well being of the children. At the time, the worker had told appellant that his wife needed to undergo a psychological examination "immediately." The statement uttered by appellant was quite telling given the nature of the injuries to the child for which appellant was held responsible. They arose from appellant's failure to care for his infant child. A paramedic found the baby malnourished, dehydrated, lethargic, unresponsive, and limp while in appellant's home. The infant's muscles had started to atrophy "to the point that we could see bone structures . . . he was covered in a rash or eczema." He was also wrapped in a blanket with his arms behind him. Moreover, appellant initially refused to allow the child to be taken to the hospital but eventually acquiesed when the medic insisted. Appellant's other children appeared in relatively good health, however.

4

These circumstances could suggest that appellant's rather wanton and callous attitude was limited to the youngest child. But, given the previously unheard evidence of appellant's outburst to the DPS worker, the trial court could well have concluded that appellant's ill mindset encompassed all his family. Allowing one child to suffer was bad enough. But, discovering that a parent and spouse lacked time to "deal" with any of his wards or wife and invoking the modifier he did to so describe those children was new data that the trial court took care to disclose as influencing his decision to levy a greater sentence. The trial court also relied on the testimony of several witnesses that they would have assisted appellant in caring for his family if he had asked for it allowing the court to conclude that he was lying in his assertion that he was having problems coping with his situation. We find no retaliation or vindictiveness on the part of the trial court, only a decision that can be justified by the record.

Accordingly, the judgment is affirmed.


Brian Quinn
Chief Justice

Do not publish.