# NO. 12-21-00075-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSHUA DAVID VERHOEF, APPELLANT* | *§* | *APPEAL FROM THE 115TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | *§* | *UPSHUR COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joshua David Verhoef appeals his conviction for assault involving family violence by impeding breath or circulation with a prior family violence conviction. He raises six issues on appeal. We affirm.

## BACKGROUND

In the evening hours on August 20, 2020, the Upshur County Sheriff's Department dispatch office received a 911 call concerning an assault. When deputies arrived at the scene, they interviewed the victim who had just run to her neighbor's home in apparent distress. The victim told deputies that Appellant struck her in the stomach and choked her, but that she resisted Appellant and escaped. Appellant did not follow the victim, but instead locked himself in the home. The victim told the deputies that she loved Appellant and did not want to press charges, but that she wanted him to leave the home. However, upon further investigation, she also told the deputies that Appellant choked her three or four times, she felt herself losing consciousness, and she was only able to escape after repeatedly attempting to strike Appellant.

The three responding deputies all observed marks on the victim's neck and abdomen. They attempted to contact Appellant, who failed to comply with their requests to vacate the home and speak with them. They learned that the home belonged to the victim, and that Appellant was her

live-in boyfriend.[1] The deputies obtained her consent to enter the premises. After nearly an hour of unsuccessfully attempting to get Appellant to speak with them, the deputies and other law enforcement officers forcefully made their entry. Upon making their entry, Appellant immediately complied and was taken into custody. The officers observed that the home was disheveled and damaged, seemingly resulting from the conflict between Appellant and the victim.

At the time, the victim was in the process of divorcing her ex-husband and was engaged in a custody battle. This was at least in part due to her relationship with Appellant, along with the fact that Appellant actively abused methamphetamine. In fact, the victim's ex-husband had a protective order preventing Appellant's presence while the victim had visitation with her son. This led to much of the violent incidents between the victim and Appellant, including the incident that is the subject of this proceeding.

The deputies arrested Appellant, who was ultimately charged by indictment for the felony offense of assault involving family violence by impeding breath or circulation with a prior family violence conviction.[2] The State later filed a notice to seek an enhanced range of punishment from a minimum of twenty-five years to ninety-nine years or life imprisonment under the habitual offender statute.[3]

Due to a conflicting strategy with counsel, Appellant sought to represent himself. After a hearing inquiring into whether Appellant competently, knowingly, intelligently, and voluntarily waived his right to counsel, along with admonishments on the dangers of self-representation, the trial court granted Appellant's request and allowed him to represent himself in both phases of the trial with standby counsel.

Appellant pleaded "not guilty" to the offense and the matter proceeded to a jury trial. The jury found him guilty of the offense. Appellant pleaded "true" to the enhancements, and after a punishment hearing, the jury assessed his punishment at imprisonment for life. This appeal followed.

---

[1] Appellant claimed that the victim was his "common law wife."

[2] *See* TEX. PENAL CODE ANN. § 22.01(b-3) (West Supp. 2021).

[3] *See id*. § 12.42(d) (West 2019).

In his first issue, Appellant argues that the evidence is insufficient to support his waiver of counsel at trial.

## Standard of Review and Applicable Law

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. This right may be waived, and a defendant may choose to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 819-20, 95 S. Ct. 2525, 2533, 45 L. Ed. 2d 562 (1975); *Fulbright v. State*, 41 S.W.3d 228, 234 (Tex. App.—Fort Worth 2001, pet. ref'd). However, a waiver of the right to counsel will not be inferred lightly, and courts will indulge every reasonable presumption against the validity of such a waiver. *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. [Panel Op.] 1980). The standard by which an appellate court reviews whether the defendant "clearly and unequivocally" invoked his right to represent himself is an abuse of discretion standard, viewing the evidence in "the light most favorable to the trial court's ruling." *Rodriguez v. State*, 491 S.W.3d 18, 28 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). An appellate court may imply "any findings of fact supported by the evidence" when the trial judge "failed to make explicit findings." *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). A waiver of counsel must be made competently, knowingly and intelligently, and voluntarily. *Collier v. State*, 959 S.W.2d 621, 625–26 (Tex. Crim. App. 1997) (citing *Godinez v. Moran*, 509 U.S. 389, 400–01, 113 S. Ct. 2680, 2687, 125 L.Ed.2d 321 (1993)).

The competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself. *Indiana v. Edwards*, 554 U.S. 164, 172, 128 S. Ct. 2379, 2384, 171 L. Ed. 2d 345 (2008); *Godinez*, 509 U.S. at 399, 113 S. Ct. at 2687; *see also Dunn v. State*, 819 S.W.2d 510, 523 (Tex. Crim. App. 1991). An assessment of the accused's technical legal knowledge is not relevant to a court's analysis of whether a defendant knowingly and intelligently exercised his right to defend himself. *Faretta*, 422 U.S. at 836, 95 S. Ct. at 2541; *see also Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (recognizing trial court not required to inquire into defendant's background to determine knowing and intelligent waiver); *Blankenship v. State*, 673 S.W.2d 578, 584 (Tex. Crim. App. 1984) (stating that to "require a lawyer's expertise as a prerequisite to asserting the right [to self-representation] would deny it to all but a small portion of society"). Moreover, the fact that a

properly admonished defendant made tactical or procedural errors in his self-representation does not render him incompetent to have waived his right to counsel. *See Cerf v. State*, 366 S.W.3d 778, 786 (Tex. App.—Amarillo 2012, no pet.).

Rather, the standard of competence to waive the right of counsel is no higher than the standard of competence to stand trial. *Chadwick*, 309 S.W.3d at 561 (citing *Godinez*, 509 U.S. at 399, 113 S. Ct. at 2686). In Texas, a defendant is competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational and factual understanding of the proceedings against him. *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). A competency determination is required only when there is sufficient evidence to create a bona fide doubt as to whether the defendant meets the test of legal competence. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). Evidence is sufficient to create a bona fide doubt if it shows recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant. *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003). Because competence "is a mixed question of law and fact that turns on an evaluation of credibility and demeanor, we review the trial judge's ruling for an abuse of discretion." *Chadwick*, 309 S.W.3d at 561 (citing *Edwards*, 554 U.S. at 177–78, 128 S. Ct. at 2387-88). "We afford almost total deference to a trial judge's rulings on mixed questions of law and fact when the resolution of the issue turns on an evaluation of credibility and demeanor." *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "We view the evidence in the light most favorable to the trial judge's ruling." *Id.* (citing *Guzman*, 955 S.W.2d at 89). "And we will imply any findings of fact supported by the evidence and necessary to support the trial judge's ruling when the judge failed to make explicit findings." *Id.* (citing *Guzman*, 955 S.W.2d at 89).

The decision to waive counsel and proceed pro se is made knowingly and intelligently if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Collier*, 959 S.W.2d at 626; *Blankenship*, 673 S.W.2d at 583. The decision is made voluntarily if it is uncoerced. *Collier*, 959 S.W.2d at 626. No formulaic questioning is required to establish a knowing and intelligent waiver. *See Blankenship*, 673 S.W.2d at 583. A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; *see also Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992).

Courts look at the totality of the particular facts and circumstances of a case in deciding whether the defendant's decision was knowing, intelligent, and voluntary. *See Grant v. State*, 255 S.W.3d 642, 647 (Tex. App.—Beaumont 2007, no pet.). The totality of the circumstances may include the defendant's education or sophistication, the complex or simple nature of the charge, and the stage of the proceeding. *See id.* at 648. Other considerations include whether the defendant was represented by counsel before trial, whether standby counsel was appointed, and whether the defendant had prior experience with the criminal justice system. *Id.*

<u>**Discussion**</u>

Appellate counsel argues in his brief that although Appellant may have been competent to stand trial, he was not competent to represent himself because of his "unrealistic faith in his Creator[,] his faith in his alleged legal training by watching a trial on T.V.[,] and the later discovery of his attention deficit disorder."

At the outset, we note that the evaluation of the competency to waive the right to counsel is the same as Appellant's competency to stand trial, an inquiry in which appellate counsel recognizes Appellant satisfied. *See Chadwick*, 309 S.W.3d at 561 (citing *Godinez*, 509 U.S. at 399, 113 S. Ct. at 2686). Moreover, the record does not show a bona fide doubt as to whether Appellant is legally competent. *See Moore*, 999 S.W.2d at 393. It does not show recent severe mental illness, moderate retardation, or truly bizarre acts. *See McDaniel*, 98 S.W.3d at 710. Appellant did explain that his faith in God helped him prepare, and that watching a nationally televised trial helped him prepare to represent himself. Appellant later claimed to have attention deficit disorder near the end of the trial. But nothing in the record shows that he was incompetent to stand trial, as admitted by appellate counsel on appeal.

Instead, the record shows that standby counsel and Appellant confirmed that they got along perfectly fine, but Appellant had a very different idea about the defensive theory of the case. Standby counsel explained that he spoke with Appellant "pretty extensively" about what it would mean to represent himself pro se. They discussed all the steps of the trial process and detailed what Appellant would be required to do during each step from voir dire through closing argument, along with what witnesses the State would call and how to prepare his direct and cross-examinations, and they discussed evidence. Appellant confirmed this and explained that he had been studying a trial preparation book and the proceedings in a lengthy and ongoing nationally televised trial on a daily basis. Appellant also explained that he outlined his examination for every

5

witness, and prepared an opening statement and closing argument. He further explained that he was prepared to offer evidence and had a list of his and the State's potential objections and his responses thereto. Whether Appellant actually had the knowledge to represent himself well and whether he made various tactical and strategic errors are not relevant factors to our determination of the competence of his waiver of counsel. *See Edwards*, 554 U.S. at 172, 128 S. Ct. at 2384; *Godinez*, 509 U.S. at 399, 113 S. Ct. at 2687; *Williams*, 252 S.W.3d at 356; *see also Cerf*, 366 S.W.3d at 786. Therefore, we hold that Appellant competently waived his right to counsel.

More than once during the hearing, the trial court extensively admonished Appellant as to the dangers and disadvantages of self-representation, along with fully explaining to him the right of counsel and that he would be held to the same standards as a lawyer and would receive no special treatment. *See Collier*, 959 S.W.2d at 626; *Blankenship*, 673 S.W.2d at 583. The trial court further clarified what Appellant would need to do during voir dire and how to conduct himself during the trial, and that his questioning would need to be relevant, and generally discussed that the rules of evidence and procedure would apply to him, and how objections work. Appellant confirmed that he understood. Accordingly, we hold that Appellant's waiver of the right to counsel was knowing and intelligent. *See id.* Furthermore, nothing in the record shows that Appellant's decision to represent himself was coerced in any way. *Collier*, 959 S.W.2d at 626. Rather, he and his counsel explained at the hearing that they had a fundamental disagreement on the strategy that should be implemented at trial, and the record shows that Appellant actively sought to pursue his own strategy and decided to represent himself with "eyes open." *See Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; *Goffney*, 843 S.W.2d at 585.

As to the remaining considerations, the record also shows that Appellant had extensive experience in the criminal justice system. He had over twenty convictions and had served time in prison. Appellant also claimed that he successfully completed a program for entrepreneurs at Baylor University at or near the top of his class, and successfully created a business that was hampered only as a result of the recent pandemic. The record shows that Appellant had been represented by counsel prior to his decision to waive his right to counsel and that the trial court ultimately appointed standby counsel. The nature of the underlying charge was fairly simple and straightforward, and the only contested issue was whether Appellant intentionally, knowingly, or recklessly impeded the victim's normal breathing or blood circulation by applying pressure to her

6

throat or neck. This issue largely involved a credibility battle among the witnesses. Appellant implemented a strategy to discredit the victim's account of the events.

We remain mindful that the State cannot force Appellant to have a lawyer. *See Faretta,* 422 U.S. at 820–21, 834, 95 S. Ct. at 2533–34. A defendant has a constitutional right to represent himself. *Id.*, 422 U.S. at 819–20, 95 S. Ct. at 2533–34. Here, the record reflects that Appellant elected to represent himself, and, under the particular facts and circumstances of this case, we hold he made his decision competently, knowingly, intelligently, and voluntarily. *See Grant,* 255 S.W.3d at 647–48.

Appellant's first issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant contends that the evidence is insufficient to support the jury's finding of guilt for the offense alleged in the indictment.

### Standard of Review

The *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

We examine the evidence in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We give full deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor

of the verdict and defer to that resolution. ***Brooks***, 323 S.W.3d at 899 n.13; ***Clayton v. State***, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Circumstantial evidence is as probative as direct evidence in establishing the accused's guilt. ***Hooper***, 214 S.W.3d at 13. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See id.* Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Applicable Law**

To prove Appellant guilty of assault involving family violence by impeding breath or circulation with a previous conviction as charged in this case, the State was required to prove that Appellant (1) was or had been in a dating relationship with the victim, (2) intentionally, knowingly, or recklessly impeded the victim's normal breathing or blood circulation by applying pressure to her throat or neck, and (3) has a prior conviction for assault family violence. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b-3) (West Supp. 2021).

A person acts intentionally "when it is his conscious objective or desire to engage in the conduct or cause the result[;]" a person acts knowingly "when he is aware of the nature of his conduct or that the circumstances exist[;]" and a person acts recklessly "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(a), (b), (c) (West 2021). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West 2021). The jury may infer intent

from circumstantial evidence, such as the defendant's acts, words, and conduct. ***Guevara v. State***, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

A victim's testimony alone can provide sufficient evidence to support a conviction of felony assault of a family member by strangulation, and the evidence need not show that the victim lost consciousness or was completely unable to breathe. *See **Marshall v. State***, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016). Thus, "any hindrance, obstruction, or impediment for any amount of time to one's breathing or blood flow is per se a bodily injury and therefore sufficient to satisfy family-violence assault." ***Philmon v. State***, 609 S.W.3d 532, 537 (Tex. Crim. App. 2020) (discussing the holding in ***Marshall*** and noting that "[t]his is an exceptionally low bar").

**Discussion**

Appellant contends that the evidence is largely a credibility battle between the victim's account of the events versus his account, that the victim instigated the incident, and there is conflicting evidence as to when and how the victim's neck marks were made. He also points to the victim's statements at the time that "I really didn't want to get him in trouble again[,]" and that she did not want to press charges; she just wanted him to leave her home.

Appellant admitted to the jury that he was present at the scene of the assault, that he and the victim were involved in the statutorily required dating or familial relationship, and that he was "high" on methamphetamine at the time. Furthermore, Appellant stipulated to the previous conviction of assault family violence involving him and his mother in 2007 that the State alleged in the indictment. In both phases of trial, Appellant admitted to an extensive criminal history, including prior incidents of family violence.[4] For example, the jury heard evidence in the guilt-innocence phase that Appellant had recently been released from prison for driving while intoxicated, and that prior to this incident, the couple had been involved in another fight in which Appellant chipped the victim's tooth, caused her nose to bleed, and gave her black eyes while attempting to restrain her and stop her from screaming. Appellant also admitted that the confrontation occurred in the instant case but argued that he did not strangle the victim or otherwise impede her breath or circulation, and instead he attempted only to restrain her from striking him.

The victim testified that she loved Appellant when he was not high on methamphetamine. She testified that Appellant used methamphetamine on the day of the incident and became upset

---

[4] Appellant largely opened the door to these extrinsic events or failed to object to the State's venturing into these issues.

because the victim deleted a text message on her phone.[5] He also became upset at an allegation the pair learned of that day that Appellant violated the protective order preventing his presence while the victim's son visited her home. The victim asked Appellant to leave, who refused and claimed that he lived there too. According to the victim, Appellant took her phone and car keys, and pushed her into the television console when she attempted to retrieve the items. She testified that she followed him to the bedroom and he punched her in the abdomen. After he struck her, the victim tried to leave and Appellant blocked the bedroom door. She testified that she began to yell for help, and Appellant began choking her, including by using both of his hands around her neck, and separately at one point had his entire arm around her neck. She testified that she was unable to breathe and seeing "spots" in her vision. She further testified that she struck Appellant several times and he let go, at which point she made her escape to the neighbor's home. As we have stated, the victim's testimony alone can provide sufficient evidence to support a conviction of felony assault of a family member by strangulation. *See Philmon*, 609 S.W.3d at 537; *Marshall*, 479 S.W.3d at 845.

However, the evidence against Appellant does not end solely with the victim's testimony. The three responding deputies testified that they observed marks on the victim's neck consistent with strangulation. Their body camera videos were admitted into evidence, one of which showed the victim, immediately after the assault, explaining that Appellant took her phone and as she attempted to retrieve it, he punched her in the stomach. The victim further explained that Appellant "choked me when I tried to scream for help." The deputy asked her for how long, and she stated that she "started to not be able to breathe," and that she hit him in the head several times to get him to stop. When asked further by the deputy, she confirmed her belief that she was losing consciousness as a result of Appellant's choke. She reiterated that she screamed for help, and he choked her more than once to get her to "hush."

On another deputy's body camera, while filling out paperwork, the victim was visibly shaken and upset, and confirmed that Appellant strangled her and impeded her breath. She said it happened three or four times, but she could not recall how long it was. She stated that he used both hands. When asked how much pressure Appellant applied, the victim stated that she could not breathe and she was hitting him to try and stop the assault. She stated that she felt like she was "about to pass out." She was initially reluctant to provide a duration for the strangulation, but

---

[5] Appellant secretly installed an "app" on the victim's phone that showed him when she deleted text messages.

ultimately estimated that it occurred for approximately twenty seconds. According to the victim, she said that Appellant told her he would stop if she quit yelling for help. However, she did not lose consciousness. But, as we have stated, the evidence need not show that the victim lost consciousness or was completely unable to breathe. *See* ***Philmon***, 609 S.W.3d at 537; ***Marshall***, 479 S.W.3d at 845. She also told the deputy that Appellant assaulted her the week prior to this incident, but she did not report it, which was consistent with Appellant's admission to the prior assault at trial.

Because it was dark at the time, it is difficult to see obvious marks on the victim's neck based on the body camera videos. However, the deputies unequivocally testified that they observed marks on the victim's neck. One of the deputies testified that he observed marks on the victim's neck that appeared to look like someone grabbed her and squeezed, leaving two fingerprint indentations on the side of her neck. He testified that the victim was in shock, scared for her life, and did not want to return home with Appellant present. Another deputy testified that he observed marks on the victim's throat, neck area, and stomach. The deputy testified that he believed Appellant committed the offense of assault family violence by strangulation because the markings on the victim's neck were consistent with her statements that Appellant choked her almost to the point of unconsciousness, as well as Appellant's refusal to exit the house. Moreover, Appellant never claimed self-defense to the deputies.

On a recorded jail call that was admitted into evidence, Appellant told his former girlfriend that he would "run his manipulation game" on the victim. Other recorded jail calls to the victim were also admitted into evidence showing that Appellant attempted to persuade the victim to change her testimony. She declined and stated that "[y]ou were choking me so hard I thought I was going to black out." He also asked the victim not to give the State any more evidence. Faced with the fact that the victim refused to change her testimony, Appellant physically threatened her.

Finally, Kim Basinger, a nurse with extensive expertise in domestic violence strangulation cases, explained to the jury the biology of brain blood flow, and what occurs biologically when blood flow and breathing are impeded. Nurse Basinger testified that she was familiar with the victim, the reports, body camera videos, and other evidence. She further opined that based on her review of this information, she believed that the victim had been strangled.

It is the jury's responsibility to resolve the conflicts in the witnesses' testimony, to weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See* ***Hooper***, 214

11

S.W.3d at 13. Moreover, the victim's testimony alone is sufficient to support a finding of guilt. *See Philmon*, 609 S.W.3d at 537; *Marshall*, 479 S.W.3d at 845. Viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Appellant committed the offense of assault involving family violence by impeding breath or circulation with a prior family violence conviction.

Appellant's second issue is overruled.

## CHARGE ERROR

In his third issue, Appellant contends that the trial court erred when including the words "habitual offender" in the court's jury charge on punishment because it was an improper comment on the weight of the evidence. Appellant argues in his fourth issue that the trial court erred when it included the words "as alleged in the enhancement paragraph" in the guilt-innocence jury charge because there is no such paragraph in that charge and its inclusion confused or misled the jury. In his fifth issue, Appellant maintains that the lesser included offense allegation in the guilt-innocence jury charge was erroneously submitted as phrased. Because these issues are all alleged charge error, we consider them together.

### Standard of Review and Applicable Law

"The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). A jury charge must include an accurate statement of the law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Moreover, the trial court must apply the law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004).

Abstract paragraphs "serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge," and application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Alcoser v. State*, No. PD-0166-20, 2022 WL 947580, at *2 (Tex. Crim. App. Mar. 30, 2022) (citing *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). Reversible error in the giving of an abstract instruction generally occurs only when the instruction is an incorrect or misleading statement of a law that "the jury must understand in order to implement the commands of the application paragraph," and the "failure to give an abstract

12

instruction is reversible only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge." *Id.* (quoting *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds, Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). Further, a jury charge must include instructions informing the jurors "'under what circumstances they should convict, or under what circumstances they should acquit' . . . ." *Id.* (quoting *Ex parte Chandler*, 719 S.W.2d 602, 606 (Tex. Crim. App. 1986)).

Furthermore, a trial court may not submit a charge that comments on the weight of the evidence. TEX. CODE CRIM. PROC. ANN. art. 36.14. A charge comments on the weight of the evidence if it assumes the truth of a controverted issue or directs undue attention to particular evidence. *See Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App—Houston [14th Dist.] 2011, pet. ref'd). "In determining whether the charge improperly comments on the weight of the evidence, we consider the court's charge as a whole and the evidence presented at trial." *Id.*

In reviewing a jury charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch*, 922 S.W.2d at 170. If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453–54 (Tex. Crim. App. 2003). If error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985), *overruled on other grounds*, *Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). If a defendant timely objects to alleged jury charge error, the record need only show "some harm" to obtain relief. *Id.* Under this less-stringent standard, when a defendant objects to the charge error, reversal is required if the error is calculated to injure the defendant's rights. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning the appellant did not receive a fair and impartial trial. *Id.* To obtain reversal for jury charge error, the appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). In the egregious harm analysis, we consider (1) the charge itself, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) arguments of counsel, and (4) any other relevant information revealed by the trial record in its entirety. *See Hutch*, 922 S.W.2d at 171.

**"Habitual Offender"**

In Appellant's third issue, he points to the language in the court's charge on punishment reading that "[h]aving found the defendant guilty of the offense assault/family violence – occlusion with previous conviction – habitual offender, as charged in the indictment and the defendant pleading true to the State's notice of enhancement, it now becomes your duty to assess the punishment in this case." Appellant claims that inclusion of the phrase "habitual offender" is a comment on the weight of the evidence. Because Appellant did not raise the question of whether the charge commented on the weight of the evidence at trial, any error on this point is reviewed for egregious harm. *See **Villarreal v. State***, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

We note that the statement, when read in context of the punishment charge as a whole and the evidence presented at trial, does not assume the truth of a controverted issue. Appellant pleaded "true" to the enhancements, and the trial court explained in the charge that "[y]ou are hereby instructed to find the enhancement paragraphs true as the defendant has insisted on pleading true." Thus, the truth of the enhancement paragraphs was uncontroverted.

Nonetheless, the trial court further explained in the charge that it was still ultimately the jury's duty to determine whether the State met its burden to prove that the enhancement allegations were true. Specifically, the charge also states the following:

> If you find the allegations in enhancement paragraph one and enhancement paragraph two of the indictment are true, you will assess the punishment of the defendant at confinement in the Texas Department of Criminal Justice for not less than twenty-five (25) years nor more than ninety-nine (99) years, or life.

The court went on to explain in its charge that the State had the burden of proving a "true" answer to each enhancement paragraph beyond a reasonable doubt, and the jury must answer "not true" if it failed to do so. Therefore, since the comment did not assume the truth of a controverted issue, and because it also informed the jury that it ultimately bore the responsibility of determining whether the enhancement paragraphs were "true," we hold that inclusion of the phrase "habitual offender" was not an improper comment on the weight of the evidence resulting in egregious harm under the circumstances presented in this case. *See **Lacaze***, 346 S.W.3d at 118.

**Enhancement Paragraph**

In Appellant's fourth issue, he contends in his brief that the trial court's application paragraph in the guilt-innocence charge erroneously conditioned a finding of guilt on the phrase

". . .and you further find the enhancement paragraph alleged in the indictment true, then you will find the defendant guilty of . . . ." Appellant contends that it was error to include the phrase "enhancement paragraph" because there are no enhancement paragraphs in the guilt-innocence portion of the trial and the charge does not otherwise identify the previous conviction, thereby confusing or misleading the jury as to the proper elements of the offense. As with Appellant's third issue, Appellant did not object to this inclusion in the charge and we review it for egregious harm. *See Villarreal*, 453 S.W.3d at 433.

At the outset, we note that Appellant's brief left out the remainder of the relevant sentence in the charge, which reads as follows: " . . . and you further find the enhancement paragraph alleged in the indictment true, then you will find the defendant guilty of the offense of assault/family violence – occlusion with previous conviction as charged in the indictment." It is clear from the record that the "enhancement paragraph" reference is not to some unidentified offense, but rather to the "previous conviction" of assault family violence as an element of the offense required to make the offense a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b-3).

The record shows that the jury was correctly apprised of the elements of the offense, including the previous conviction, when the indictment was presented at the beginning of the trial. Furthermore, prior to the State's resting, it offered evidence of Appellant's previous assault family violence conviction required as an element to make this offense the second-degree felony offense of assault family violence by impeding breath or circulation *with a prior family violence conviction*. *See id.* Appellant stipulated to the previous conviction. Furthermore, the judgment establishing the previous conviction was admitted into evidence as State's Exhibit Number 11 and published to the jury. The State thereafter reiterated in its jury argument as follows:

> You all saw we admitted State's Exhibit No. 11 yesterday. We admitted this because one of the things we're required to prove in this kind of case is that he had a prior assault family violence conviction. That's what we're required to do. That's one of the elements we must meet.

The State went on to discuss the nature of this prior offense in its argument. Moreover, during the trial itself, Appellant testified concerning the nature of the previous conviction, which was a conviction for an offense in 2007 relating to Appellant's assault against his mother. Even assuming it was error to include the phrase "enhancement paragraph," we hold that Appellant did not suffer egregious harm because the jury was not misled by its inclusion, and it is clear from the record

15

that this reference was to the previous conviction required to prove the offense as alleged in the indictment.[6] *See id.*

## Lesser-Included Offense Submission

Appellant argues in his fifth issue that the trial court failed to identify an alleged manner or means of causing "bodily injury" in what he identifies as the lesser-included offense instruction. Unlike his third and fourth issues, Appellant objected to the charge on this ground. The charge first described the primary charge of assault family violence by impeding breath or circulation with a prior family violence conviction. The next paragraph stated as follows:

> If you do not unanimously agree to the paragraph stated above as stated in the indictment and you have reasonable doubt as to whether the defendant impeded the normal breathing or circulation of the blood of the complainant, you will consider the following paragraph.

The next paragraph in the charge described the elements for a classical assault family violence case with previous conviction without an allegation that Appellant impeded the victim's breathing or circulation. Furthermore, the verdict form itself makes a clear distinction containing one blank for the impeding breath or circulation offense and one blank for assault family violence with a previous conviction without the impeding breath or circulation allegation.

The evidence adduced at trial showed that Appellant also punched the victim in the stomach as part of this assault. In explaining the charge to the jury, the State argued as follows:

> Now, there's another section that if for whatever reason the 12 of y'all cannot agree that that happened, there's another section, because you heard testimony that he struck her even by his own mouth, "I shoved her away. Got her in the stomach." You heard that. So there's a section below that, if the 12 of you can't agree that he occluded her—strangled her—there's that next section, but it's one or the other.

Although not required to do so, Appellant did not explain how he was harmed by the omission of the manner and means. *See **Reeves***, 420 S.W.3d at 816 (parties do not have burden to

---

[6] The Texas Court of Criminal Appeals has found no error where an appellate court assumed without deciding jury charge error and decided the case solely on harm. *See **Vogel v. State***, No. PD-0873-13, 2014 WL 5394605, at *2 (Tex. Crim. App. Sept. 17, 2014) (op., not designated for publication). The Court reasoned that, because ***Almanza v. State***, 686 S.W.2d 157 (Tex. Crim. App. 1985), *overruled on other grounds*, ***Rodriguez v. State***, 758 S.W.2d 787 (Tex. Crim. App. 1988) requires both a jury charge error and harm, it makes no difference which prong a court of appeals finds lacking in rejecting a claim of reversible jury-charge error. ***Id.*** This approach promotes the virtues of deciding cases on narrower grounds and enhancing judicial efficiency by addressing those elements of a claim that are more quickly and easily resolved. ***Id.***

prove harm and reviewing court determines whether error is harmful). Given that the record is clear that the jury was to answer that question only if it found that Appellant did not impede the victim's breath or circulation, but instead assaulted her when he struck her in the stomach, we fail to see how Appellant was harmed, especially since the jury found him guilty of the primary offense—assault family violence by impeding her breath or circulation with a previous conviction. In other words, Appellant suffered no actual harm, and any harm would have been merely theoretical, which does not warrant reversal. *See Sanchez*, 376 S.W.3d at 775; *Arline*, 721 S.W.2d at 352; *see also Reeves*, 420 S.W.3d at 816 (stating that "this less-stringent [harm] standard still requires the reviewing court to find that the defendant suffered some actual, rather than merely theoretical, harm from the error").

Accordingly, Appellant's third, fourth, and fifth issues are overruled.

## IMPROPER PUNISHMENT ENHANCEMENT

In his sixth issue, Appellant argues that the trial court erroneously permitted the jury conviction and punishment to be enhanced based upon a misdemeanor conviction. Appellant's counsel stated in his brief that "Appellant has requested this attorney to raise this issue on appeal and although his legal reasoning is correct, his factual understanding is misplaced." The State agrees with Appellant's counsel.

The charging paragraph in the indictment alleges a previous misdemeanor conviction for assault family violence in the 188th Judicial District Court of Gregg County, Texas, on May 2007. This offense constitutes the required "previous conviction" element involving Appellant's assault on his mother we discussed earlier in this opinion. The offense is not an enhancement, but instead is an element to confer felony jurisdiction by classifying this offense in the instant case as a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b-3); *Holoman v. State*, 620 S.W.3d 141, 143 (Tex. Crim. App. 2021).

Counsel notes that during the punishment phase, the State introduced into evidence several prior misdemeanor convictions, usually without objection by Appellant. However, none of these were alleged as enhancements in the indictment or included or referenced by the trial court in its punishment phase jury charge. Accordingly, contrary to Appellant's contention, no misdemeanor offense was used as an enhancement. *See id.*

Appellant's sixth issue is overruled.

## DISPOSITION

Having overruled Appellant's six issues, the judgment of the trial court is ***affirmed***.

**GREG NEELEY**
Justice

Opinion delivered June 30, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 30, 2022**

**NO. 12-21-00075-CR**

**JOSHUA DAVID VERHOEF,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 115th District Court

of Upshur County, Texas (Tr.Ct.No. 18,873)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*