In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00429-CR**
**NO. 09-22-00430-CR**
**NO. 09-22-00431-CR**

_____

**DUSTY AUTHEMENT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause Nos. 19-31321, 19-31325, and 19-31326**

---

**MEMORANDUM OPINION**

Dusty Authement appeals his convictions for the offense of continuous sexual abuse of a young child in trial court cause number 19-31321 and the offenses of sexual assault of a child in trial court cause numbers 19-31325 and 19-31326. *See* Tex. Penal Code Ann. §§ 21.02, 22.011(a)(2). In five issues, Authement complains

about the denial of counsel and the admission of extraneous offense evidence. For the reasons discussed below, we affirm the trial court's judgments.

## PROCEDURAL BACKGROUND

In trial cause number 19-31321, a grand jury indicted Authement for the offense of continuous sexual abuse of a young child occurring from on or about March 29, 2013, through on or about March 29, 2016, alleging that he committed two or more acts of sexual abuse against Kate,[1] a child who was younger than 14 years of age, namely, aggravated sexual assault and indecency with a child. *See id*. §§ 21.02, 22.021(a)(1)(B). In trial cause number 19-31325, a grand jury indicted Authement for the offense of sexual assault of a child, alleging that on July 1, 2018, he intentionally and knowingly caused his sexual organ to contact or penetrate the mouth of Kate, a child younger than 17 years of age. *See id*. § 22.011(a)(2)(B). In trial cause number 19-31326, a grand jury indicted Authement for the offense of sexual assault of a child alleging that on August 15, 2018, he intentionally and knowingly caused his sexual organ to contact or penetrate the sexual organ of Kate,

---

[1]We refer to the crime victims by a pseudonym to protect their privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's identity and privacy throughout the criminal justice process").

2

a child younger than 17 years of age. *See id.* § 22.011(a)(2)(A). The three cases were tried together before the same jury.

Kate, who was twenty years old at the time of trial, testified that her stepfather, Authement, started molesting her when she was eleven years old, and when she was sixteen, she told her grandmother about the sexual abuse. Kate testified that Authement sexually abused her for five years, and he also sexually abused her sister, Kelly. Kate explained that when she was eleven, Authement started putting his hand underneath her underwear and touching the outside of her genitals and making her touch his penis with her hand and give him a "hand job." Kate explained that when she was thirteen she lost her virginity when Authement put his penis inside her genitals, and she testified that Authement had sex with her approximately twenty times. Kate also testified that Authement put his penis in her mouth.

After Kate's direct testimony, the State informed the trial court that it intended to call two of Kate's sisters, Kelly and Debbie, and offer their testimony under Article 38.37 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. The record shows that before the trial court decided whether to admit the evidence addressing Authement's extraneous offenses against Kelly and Debbie, the trial court conducted the required Article 38.37 hearing without the jury present. *See id.* art. 38.37 § 2-a. During the hearing, Kelly testified that her stepfather, Authement, began sexually abusing her when she was around eight or

3

nine years old. Kelly explained that he touched her breasts, vagina, and butt with his hand both on top and underneath her clothing, and when she was around twelve or thirteen, he started putting his penis into her vagina a couple of times a week. Kelly testified that the abuse continued for years and included Authement performing oral sex on her and her touching Authement's penis with her hand. Kelly explained that she was thirteen when she told her mother about the abuse, but Authement claimed she was lying and the abuse continued.

The State argued that Kelly's testimony was admissible under Article 38.37, section 2, because Authement was on trial for continuous sexual abuse of a child and sexual assault of a child concerning Kate and was also under indictment for committing those same offenses against Kelly. The State offered Kelly's testimony "for any bearing the evidence has on relevant matters including the character of the defendant and acts performed in conformity with that character." The State argued that Kelly's testimony was relevant because it informed the jury that it was more likely Authement sexually abused Kate since he also sexually abused Kelly and Debbie. Authement complained about the testimony's relevance and argued its probative value was greatly outweighed by the prejudicial value.

The trial court found that Kelly's testimony:

is likely to be admitted here subsequently in this trial when she is called before the jury and would be adequate to support a finding by the jury if they believed beyond a reasonable doubt that the defendant

4

committed the separate offenses beyond a reasonable doubt. And this Court is making this finding based upon a hearing outside the presence of the jury and I will allow its admissibility and we will have to give an instruction to the jury that it can be admitted for any bearing the evidence has on relevant matters which includes the character of the defendant and acts performed in conformity with the character of the defendant.

The trial court conducted a second Article 38.37 hearing to consider the admissibility of Debbie's testimony. Debbie testified that she was sleeping in bed with her parents when she was twelve years old when her father, Authement, touched her breasts underneath her clothes and started "dry humping" her, and she explained that she felt Authement's penis pressing against her butt. Debbie testified that she told her mother, who stated that Authement probably thought it was her and not Debbie, but Debbie stated that Authement was awake and knew what side of the bed she was on.

The State argued that Debbie's testimony was admissible under Article 38.37 for any bearing it had on relevant matters, including the defendant's character and acts performed in conformity with that character, and Authement objected to the relevancy and prejudicial value of the testimony. The trial court overruled Authement's objections to Kelly's and Debbie's testimony; found the evidence admissible under section two of Article 38.37 and that the probative value of the evidence was not substantially outweighed by its prejudicial value; admitted the evidence for any bearing it may have on relevant matters, including the defendant's

5

character and acts performed in conformity with that character; and found that the evidence was adequate to support a finding by the jury that Authement committed those acts beyond a reasonable doubt. The trial court explained that the evidence concerning allegations of sexual misconduct "are maybe of the highest prejudicial issues in evidence admitted in cases, but Article 38.37 was passed by the legislature to deal with that sensitive issue[,]" and the trial court found that the issues provided evidentiary value, including the age of the victims, which conforms to Kate's age, and the fact that all the allegations of sexual abuse occurred in the same home and similar environment.

The trial court allowed both Kelly and Debbie to testify in front of the jury about Authement's sexual abuse. The trial court instructed the jury that it could only consider their testimony for any bearing the evidence may have on relevant matters from the three pending indictments, including the character of the defendant and whether acts that are being testified to were performed in conformity with the character of the defendant. The trial court further instructed the jury that before testimony could be considered for the limited purposes in the deliberations, the jury must believe beyond a reasonable doubt that the testimony is true.

Syrena Krummel, a forensic nurse, also was allowed to testify about State's Exhibits 23, 24, and 25 that contained medical records concerning the SANE exams for Kate, Kelly, and Debbie. Authement objected to States's Exhibits 24 and 25,

6

Kelly and Debbie's SANE exams, as being irrelevant because they did not relate to the complaining witness, and he argued the evidence would confuse the jury. The State argued that the medical evidence was admissible under Article 38.37 as additional evidence to support the testimony of the witnesses. The trial court overruled Authement's objections, admitted State's Exhibits 24 and 25, reminded the jury about its previous instruction about matters involving alleged additional or separate crimes of different children other than the complaining witness in the indictment, and informed the jury that it could only consider the evidence for any bearing it may have on relevant matters from the pending indictments, including the character of the defendant and whether acts that are being testified to were performed in conformity with the character of the defendant, and only if it believed the evidence beyond a reasonable doubt.

Krummel testified about the SANE exam she performed on Kelly, including Kelly's statement that Authement sexually abused her for almost four years. Krummel also testified about Debbie's SANE exam and that Debbie reported that Authement touched her breast under her clothes and humped her from behind on one occasion.

In trial cause number 19-31321, the jury found Authement guilty of continuous sexual abuse of a young child and assessed punishment at life in prison. In trial cause numbers 19-31325 and 19-31326, the jury found Authement guilty of

sexual assault of a child and assessed punishment at twenty years of confinement in each case.

## ANALYSIS

In issue one, Authement complains the trial court erred by allowing him to terminate his court appointed counsel in the middle of trial and forcing him to represent himself to his detriment. Authement contends the trial court failed to adequately admonish him concerning the disadvantages and other factors of self-representation. In issue two, Authement argues the trial court's actions denied him his constitutional and statutory rights to the effective assistance of counsel.

A criminal defendant has the right to assistance of counsel and right to waive counsel and represent himself. *See* U.S. CONST. amends. VI, XIV; Tex. Const. art. 1 § 10; Tex. Code Crim. Proc. Ann. art. 1.05. The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant's right to counsel. *See Thomas v. State*, 550 S.W.2d 64, 67 (Tex. Crim. App. 1977).

The Sixth Amendment also implies that a criminal defendant has the right to waive counsel and represent himself. *See Faretta v. California*, 422 U.S. 806, 819 (1975). A waiver of counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *See id.* at 834–36; *see also Godinez v. Moran*, 509 U.S. 389, 400–01 (1993); *Collier v. State*, 959 S.W.2d 621, 625–26 (Tex. Crim. App. 1997). "The decision to waive counsel and proceed *pro se* is made 'knowingly and

8

intelligently' if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation." *Collier*, 959 S.W.2d at 626 (citing *Faretta*, 422 U.S. at 834–36); *see also Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992). The record must show the trial court thoroughly admonished the defendant. *Faretta*, 422 U.S. at 834–36; *Collier*, 959 S.W.2d at 626 n.8.

"[T]he record must be sufficient for the reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation." *Goffney*, 843 S.W.2d at 585 (citation omitted). In other words, when a defendant desires to proceed pro se, our inquiry "must center *not* on a traditional waiver of counsel analysis, but on whether the defendant is aware of the dangers and disadvantages of self-representation." *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988). In determining whether the defendant knowingly and intelligently waived counsel, we consider the totality of the circumstances, including the accused's background, experience, and conduct. *See Grant v. State*, 255 S.W.3d 642, 647–48 (Tex. App.—Beaumont 2007, no pet.). These considerations may include a defendant's education or sophistication, the simplicity of the charge, and the stage of the proceeding. *Id.* at 648. Other considerations include whether counsel represented the defendant before trial, whether standby

9

counsel was appointed, and whether a defendant had experience with the criminal justice system. *Id.*

"In analyzing a defendant's assertion of his right to self-representation, the focus is not solely on whether the right to counsel was waived but also on whether the defendant was aware of the dangers and disadvantages of self-representation." *Huggins v. State*, No. PD-0590-21, 2023 WL 5729843, at *2 (Tex. Crim. App.— Sept. 6, 2023) (citing *Goffney*, 843 S.W.2d at 585). A trial judge should ensure that a defendant's choice to represent himself at trial is informed and made with eyes open. *Faretta*, 422 U.S. at 835.

The record reflects that on March 18, 2019, the trial court appointed Authement counsel, and on April 15, 2019, the trial court found good cause existed to substitute another attorney as appointed counsel. On August 23, 2020, Authement filed a pro se Motion to Substitute Counsel, claiming that his trial counsel had provided ineffective assistance by disregarding his defense and failing to communicate, obtain discovery, and gather evidence. On March 29, 2022, Authement filed a pro se Motion to Dismiss for Ineffective Assistance of Counsel and sought the dismissal of all pending charges against him for denial of counsel and his right to a speedy trial. Authement also filed a pro se Motion for Defendant's Constitutional Right to Hybrid Representation, stating that he did not want to

10

expressly relinquish any of his constitutional and statutory rights, had no wish to represent himself, and wanted his attorney of record to file all motions on his behalf.

The record shows that after the State rested, the following exchange occurred:

THE COURT: . . . Mr. Authement, the defendant, I have been informed that you wish to represent yourself at this time. Is that true?

THE DEFENDANT: I wish to waive my rights to court appointed counsel, yes, sir.

THE COURT: Is that yes?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. All right. Have you thought about that for a long time?

THE DEFENDANT: I've thought about it enough.

THE COURT: Okay. All right. The law provides that if a defendant wishes to . . . waive his right to counsel, the Court must advise you of the dangers and disadvantages of self-representation. So, that's the first thing. No. 1, I've done this for 40 years and I thought when I got into law school, the first day of law school, that I knew a lot and I realized this is like brain surgery.

THE DEFENDANT: Right. I understand.

THE COURT: It takes -- it's not only a science. It's an art, as well, which not only takes education, but also training and experience. Have you ever been -- I don't ask -- I'm not asking this facetiously. Have your ever practiced law in your life? I don't know much about you. Were you a lawyer at any time?

THE DEFENDANT: I was not a lawyer at any time but I've been learning from someone that has been studying for the last 25 years, I hear you're rivals with, is Mr. John Mark Whatley.

11

THE COURT: I don't -- I don't even know that person.

THE DEFENDANT: He's been in your court in trial I think two times.

THE COURT: I don't remember. I've only had 550 trials.

. . .

THE DEFENDANT: So, I learned from him anyways; and I do know quite a bit. All the stuff, the motions that I have put in and filed myself because he didn't do it, which is due process violation 'cause I needed him to and he wasn't there for me, I actually helped write these.

THE COURT: Okay.

THE DEFENDANT: So, I would like all of them, plus this one right here, ruled on today before we go into –

THE COURT: Okay. Let me get to one step at a time. The dangers and disadvantages of self-representation. If you decide to represent yourself, you're going to have to act in accordance with the laws which include the Rules of Evidence which include the Code of Criminal Procedure.

THE DEFENDANT: Yes, sir.

THE COURT: Which includes the penal codes, which are the laws that are essentially applicable in these particular cases. And the fact that you have not been an attorney before, nor experienced in it, in a case where you are looking at life imprisonment –

THE DEFENDANT: Yes, sir.

THE COURT: -- in all cases, right? All these cases. Is that right? Standby. No, you've got two second-degree felonies, up to 20 years imprisonment, but the most serious, continuous sexual abuse of a child, carries with it potentially up to life in prison and parole is not an option

12

nor probation. So, there you have some obstacles and hurdles that you must navigate around which takes experience. But you are a grown-up. How old are you now?

THE DEFENDANT: I am 37, sir.

THE COURT: You're a grown-up. How far did you go in school?

THE DEFENDANT: I went to the 11th grade and then I started having kids and having to take care of them --

THE COURT: Okay.

. . .

THE DEFENDANT: I guess that's normal for some people and some people it isn't, to have to go or to have to stop school to go to work to provide for their families better at the present time that that happened.

THE COURT: All right. The first thing is that Mr. West, who has been appointed to represent you, I don't think you've retained him.

THE DEFENDANT: No.

THE COURT: He's appointed to represent you.

THE DEFENDANT: Yes, sir.

. . .

THE COURT: . . . I know him to be an experienced and competent and very effective attorney. But as an adult, which I find you to be an adult and competent to make your own adult decisions, you have a right to waive your right to counsel and if I grant that, you are intending to what, self-represent? Represent yourself?

THE DEFENDANT: Yes, sir.

13

THE COURT: You don't have an attorney retained or anything like that –

THE DEFENDANT: No. sir.

THE COURT: . . . So, are you requesting the Court to discontinue Mr. West as your attorney and allow you to represent yourself through the remainder of this trial, these trials?

THE DEFENDANT: Yes, sir. But I was under the impression that he would be on standby for me if I needed somebody.

THE COURT: I haven't gotten to that part yet.

THE DEFENDANT: Okay. I'm sorry. Yes, sir.

THE COURT: But that's what you're asking for right?

THE DEFENDANT: Yes, sir.

THE COURT: Are you making this decision voluntarily, after thought and reflection –

THE DEFENDANT: Yes, sir.

THE COURT: --or, in other words, intelligently?

THE DEFENDANT: Yes, sir.

THE COURT: And you are doing that on your own free will?

THE DEFENDANT: Yes, I am.

THE COURT: All right. If you are unable to afford counsel, one can be appointed to represent you free of charge. Understanding your right to have counsel appointed for you, even free of charge to you if you are not financially able to employ counsel, do you wish to waive

14

that right and are you requesting the Court to proceed with your cases without an attorney being appointed for you?

THE DEFENDANT: May I ask a question, sir?

THE COURT: Uh-huh.

THE DEFENDANT: I've put in for a motion to -- for ineffective assistance of counsel. Can I have that granted to be able to get a decent attorney that I think is decent?

THE COURT: Not at this time. I mean, we're in the middle of trial, sir. You've got -- you're entitled to a competent attorney. No matter what you may subjectively think, Mr. West I have not found to be incompetent, nor have I ever known him in his lengthy time of practicing to ever have been sanctioned by the bar association but –

THE DEFENDANT: May I say something else?

THE COURT:  But -- I'm just asking you one question at a time and then answer. Is that what you're asking me to do?

THE DEFENDANT: Yes.

THE COURT: Okay.

THE DEFENDANT: Yes, sir.

THE COURT: Now, you may withdraw this waiver of right to counsel at any time and if you withdraw that waiver, then the Court in its discretion may provide you appointed counsel that's competent but we're in trial right now and we are about to move toward whatever presentation that -- the State has rested, then whatever presentation you wish to make will be allowed and then we go into final arguments.

So, what I'm going to do at your request is find that you are making your decision to self-represent voluntarily, knowingly, intelligently, and that I will allow Mr. West, who is a competent attorney, to stand by and assist you if necessary. At any time that you need to discuss something with him, please make that known to the

Court and the Court will allow you to consult with him because these are important cases in your life. I have something called election to self-represent, a document right here. Please review it, sign it, if that's what you wish. . . .

. . .

THE COURT: . . . You have requested here on – after the State has rested overnight and here on the third day of trial, you have requested that the court relieve Mr. West, your court appointed attorney, as your attorney. Is that what you still wish?

THE DEFENDANT: Yes, your honor.

THE COURT: You're making that decision after we've talked earlier and based upon reflection and you are requesting that voluntarily?

THE DEFENANT: Yes, your Honor.

THE COURT: All right. I've tendered to you that document waiver. Have you seen it?

THE DEFENDANT: I have seen it.

THE COURT: All right. Will you please sign that? It expresses exactly what you're asking for. Read it. . . .

. . .

THE COURT: . . . Okay. Give it to bailiff if you'd be so kind. Thank you. Thank you very much. This will be received and granted this day.
All right. The Court is finding that the defendant has knowingly and voluntarily elected to represent himself at this stage of the trial, even though the State has rested. And we have been in his trial for three days. The Court is, after discussing this with the defendant, is going to grant his request; but I'm going to ask Mr. West to stay at counsel table. And, Mr. Authement, at any time if you need to discuss any matters

16

with Mr. West, who is again a licensed competent attorney. . . . He will be sitting there but as a person who is going to represent themselves, you are going to be required to follow the rules of evidence . . . and you will be required to follow the Code of Criminal Procedure and all other laws. Even though you may not be schooled in them, if you're going to represent yourself, you are saddled with that responsibility of following those rules, nonetheless. Do you understand?

THE DEFENDANT: Yes, sir.

The record shows the trial court questioned Authement about his education and training, admonished him concerning the right of self-representation, and discussed his attempts to file items on his behalf and his complaints regarding his perceived denial of his constitutional rights. The trial court inquired about Authement's desire to relieve his court appointed counsel and the Election to Self-Represent, which Authement signed. The Election to Self-Represent states:

I have been advised on the 29th day of November, 2022, by the Criminal District Court of my right to representation by counsel in the cases pending against me. I have been further advised that if I am unable to afford counsel, one will be appointed for me free of charge. Understanding my right to have counsel appointed for me free of charge if I am not financially able to employ counsel, I wish to waive that right and request the court proceed with my case without an attorney being appointed for me. I hereby waive my right to counsel. I understand that I may withdraw a waiver of the right to counsel at any time. I am making this decision freely and voluntarily.

The record also established that the trial court discussed with Authement the charges against him, the risks of proceeding without counsel, including evidentiary issues, and the dangers of representing himself. The trial court allowed Authement's

17

court appointed counsel to act as standby counsel to assist Authement if needed. Based on the totality of the circumstances, the trial court sufficiently admonished Authement about the dangers of representing himself, and the record shows Authement knowingly and intelligently chose to do so, thereby effectively waiving his right to counsel. *See Faretta*, 422 U.S. at 835; *Collier*, 959 S.W.2d at 626 n.8; *Goffney*, 843 S.W.2d at 585. Based on the record before us, we conclude that Authement was "aware of the dangers and disadvantages of self-representation[,]" and he made his choice with "eyes open." *See Faretta*, 422 U.S. at 835; *Huggins*, 2023 WL 5729843, at *2; *Goffney*, 843 S.W.2d at 585. Additionally, by choosing to represent himself, Authement forfeited any subsequent ineffective assistance of counsel claim. *See Perez v. State*, 261 S.W.3d 760, 766 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Faretta*, 422 U.S. at 834 n.46). We overrule issues one and two.

In issues three and four, Authement complains the trial court erred by admitting evidence of extraneous sexual abuse concerning Kelly and Debbie. Authement argues the evidence should have been excluded because it was so prejudicial as to outweigh any probative value.

Generally, evidence of extraneous offenses may not be used against the accused in a criminal trial, but exceptions to this prohibition exist. One such exception is Article 38.37 of the Texas Code of Criminal Procedure, which provides

for a hearing outside the jury's presence so the trial court can determine whether certain evidence of extraneous offenses should be admitted at trial. *Lopez v. State*, No. 09-19-00179-CR, 2021 WL 1010957, at *6 (Tex. App.—Beaumont Mar. 17, 2021, no pet.) (mem. op., not designated for publication); *see* Tex. Code Crim Proc. Ann. art. 38.37. Section 2(b) of the statute allows for the admission of evidence of extraneous offenses committed by the defendant against individuals other than the victim and states as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Code Crim Proc. Ann. art. 38.37 § 2(b); *see Lopez*, 2021 WL 1010957, at *6 (citing *Aguillen v. State*, 534 S.W.3d 701, 711 (Tex. App.—Texarkana 2017, no pet.)).

Although extraneous-offense evidence admissible under Article 38.37 does not have to meet the requirement of Texas Rule of Evidence 404, the trial court must conduct a balancing test under Rule of Evidence 403 before it admits the evidence. *See* Tex. Code Crim Proc. Ann. art. 38.37 § 2(b); *see also Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006); *Lopez*, 2021 WL 1010957, at *6. When a trial court conducts a Rule 403 balancing test, it

must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume and inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The trial court may exclude the evidence if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. The trial court must also determine whether the evidence of prior sexual misconduct likely to be admitted will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt. Tex. Code Crim Proc. Ann. art. 38.37 § 2-a; *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.).

We review the trial court's decision to admit evidence of extraneous offenses under Article 38.37 for an abuse of discretion. *Guevara v. State*, 667 S.W.3d 422, 438–39 (Tex. App.—Beaumont 2023, pet. ref'd); *Lopez*, 2021 WL 1010957, at *7 (citing *Devoe v. State*, 354 S.W.3d 457, 468 (Tex. Crim. App. 2011)) (other citations omitted). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

20

Generally, when challenged on appeal, a ruling admitting evidence of extraneous offenses will be found to fall within the zone of reasonable disagreement "if evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of the evidence is not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* at 344.

The record shows that before the trial court decided whether to admit the evidence addressing Authement's extraneous offenses, the trial court conducted the required Article 38.37 hearing without the jury present. *See* Tex. Code Crim Proc. Ann. art. 38.37, § 2-a. The record further shows that the trial court conducted the necessary balancing test and found that the probative value of the evidence was not substantially outweighed by its prejudicial value, explaining that the evidence had evidentiary value because the victims were the same age as Kate and all the allegations of sexual abuse occurred in the same home and similar environment. Based on the record before us, we conclude the trial court did not abuse its discretion by admitting the evidence concerning Authement's extraneous offenses against Kelly and Debbie pursuant to Article 38.37, section 2. *See Deggs v. State*, 646 S.W.3d 916, 925 (Tex. App.—Waco 2022, pet. ref'd) (explaining that the probative value of sexual offenses committed against other children is generally not substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence); *Buxton v. State*,

21

526 S.W.3d 666, 689 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (affirming trial court's admission of evidence pursuant to Article 38.37 that defendant committed extraneous bad acts against complainant's sister); *Belcher*, 474 S.W.3d at 847–48 (concluding trial court did not abuse its discretion by determining that the probative values of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice). We overrule issues three and four.

In issue five, Authement argues the trial court abused its discretion by admitting State's Exhibit 26, a video recording of Debbie's Garth House interview, over his objection. Authement complains that the prejudicial effect of the introduction of the video was overwhelming, the evidence was hearsay, the State failed to lay a proper predicate for its admission, and its admission violated Article 38.071 of the Texas Code of Criminal Procedure and his constitutional rights to confrontation of witnesses and due process.

The record shows that after Authement chose to represent himself at trial, he recalled Debbie to the stand and questioned her about why she did not tell the authorities about any of the things other than the sexual acts that she had accused him of. During its examination, the State asked Debbie if she remembered telling the people at the Garth House that she saw Authement assault her brother and sought to admit her Garth House video. Authement objected that the video was evidence that should not be used, and when the trial court asked what his specific objection

22

was under the Rules of Evidence, Authement objected that he had not seen the evidence prior to trial and would like it dismissed.

The trial court overruled Authement's objection, and the State asked to publish the video to the jury, arguing that during his direct examination, Authement opened the door to the admission of the video by creating the false impression that Debbie did not tell the interviewers everything at the Garth House. Regarding Authement's complaint that he had not viewed the video, the State explained that it made the video available to defense counsel and the defendant, and Authement argued his counsel had failed to show him the video. The trial court found that Authement opened the door for its admissibility and allowed the jury to view the video.

Based on our review of the record, Authement's objections at trial do not comport with the arguments he makes on appeal. When an appellant's trial objection does not comport with his argument on appeal, the appellant has not preserved the issue for our review. *See Borne v. State*, 593 S.W.3d 404, 412 (Tex. App.—Beaumont 2020, no pet.) (citations omitted); *see also Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). Since Authement's complaints on appeal do not comport with his objections at trial, we conclude that Authement has not preserved any error. *See Thomas*, 723 S.W.2d at 700; *Borne*, 593 S.W.3d at 412. We overrule

issue five. Having overruled each of Authement's issues, we affirm the trial court's judgments in cause numbers 19-31321, 19-31325, and 19-31326.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on August 29, 2023
Opinion Delivered October 18, 2023
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.

24