**Kiheem GRANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–06–172 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 28, 2007.

Decided Oct. 24, 2007.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Criminal District Atty., Wayln G. Thompson, Assistant Criminal District Atty., Beaumont, TX, for state.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Kiheem Grant was convicted of murder. The jury assessed punishment at incarceration for life and a fine in the amount of $10,000.

Grant raises six issues in this appeal. In his first two issues, Grant argues the trial court did not properly warn him of the dangers of self-representation, and through his deficient self-representation, he contributed to his own conviction. In issue three, he complains of the shackles used to restrain him during the trial. In issue four, he raises error in the procedure followed for his opening statement. In issues five and six, he says the trial court erred in not giving him more time to review written statements of witnesses before cross-examination. Finding no reversible error, we affirm the trial court's judgment.

THE RIGHT TO SELF-REPRESENTATION

The first two issues Grant presents are:

1. The trial court failed to admonish appellant sufficiently concerning the dangers of self-representation.

2. Appellant was denied his right to counsel.

The rights to assistance of counsel and to self-representation are protected by the Sixth Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment. *See Faretta v. California,* 422 U.S. 806, 818–21, 95

S.Ct. 2525, 45 L.Ed.2d 562 (1975). *See also United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). "The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta,* 422 U.S. at 807, 95 S.Ct. 2525; *see also Argersinger v. Hamlin,* 407 U.S. 25, 37–38, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 343–345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In *Faretta,* the Supreme Court held that the Sixth Amendment not only affords an accused facing an adversarial criminal proceeding the right to a defense, but the Sixth Amendment also "grants to the accused personally the right to make his defense." *Faretta,* 422 U.S. at 819, 95 S.Ct. 2525. As the Court noted:

> Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Id.* at 819–20, 95 S.Ct. 2525 (footnote omitted). The Court explained that it is for the defendant personally to decide whether assistance of counsel in his particular case is to his advantage, and his choice must be honored out of " 'that respect for the individual which is the lifeblood of the law[,]' " even if his choice may ultimately be to his own detriment. *Id.* at 834, 95 S.Ct. 2525 (quoting *Illinois v. Allen,* 397 U.S. 337, 350–51, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)). It has been observed that the two constitutional rights—to assistance of counsel and to self-representation—are "mutually exclusive," and their "clash" can create difficult situations for trial courts. *See Tuitt v. Fair,* 822 F.2d 166, 174 (1st Cir.1987).

Immediately upon opening court in this case, and outside the presence of the venire panel, the following took place:

THE COURT: This is Cause No. 90653, the State of Texas vs. Kiheem Grant. Are you Mr. Grant?

THE DEFENDANT: Yes, I am.

THE COURT: Okay. Mr. Grant, it's been brought to my attention that maybe you want to represent yourself in this case?

THE DEFENDANT: Yeah, yes, sir.

THE COURT: Are you sure about that?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that you have an absolute right if you can't afford an attorney that I will appoint one. In fact, I've appointed a board certified attorney by the name of Doug Barlow to represent you. And Mr. Barlow has been working on your case and, from what I understand, is ready to go to trial on your behalf today. But you have an absolute right to represent yourself if that's what you chose to do.

THE DEFENDANT: I want to represent myself.

THE COURT: Do you have any questions about the pitfalls, about how it's not in your best interest for you to represent yourself? Do you have any questions about that?

THE DEFENDANT: No.

THE COURT: I'm gonna let you represent yourself. Mr. Barlow, you're gonna be standby counsel. And we're ready to proceed.

Grant represented himself through the trial. Appointed counsel and another attorney were present at trial to assist Grant as standby counsel. Appointed counsel represents Grant in this appeal. Arguing his first two appellate issues together, Grant contends the waiver of his right to assistance of trial counsel and the assertion of his right to self-representation are invalid because the inquiry conducted by the trial court was deficient.

 A decision to represent oneself must be made knowingly, intelligently, and voluntarily. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (citing *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). In *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Supreme Court contrasted a "knowing and voluntary" inquiry from a competency inquiry:

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. See *Drope v. Missouri,* [420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)] (defendant is incompetent if he "lacks the *capacity* to understand the nature and object of the proceedings against him") (emphasis added). The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced. See *Faretta v. California,* [422 U.S. at 835, 95 S.Ct. 2525] (defendant waiving counsel must be "made aware of the

dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' ") (quoting *Adams v. United States ex rel. McCann,* [317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).]

*Godinez,* 509 U.S. at 401 n. 12, 113 S.Ct. 2680 (emphasis in original); *accord Moore v. State,* 999 S.W.2d 385, 396 n. 5 (Tex. Crim.App.1999). Quoting *Chapman v. United States,* 553 F.2d 886, 892 (5th Cir. 1977), the First Circuit in *Tuitt* explained:

> The election to defend pro se entails the waiver of the right to be represented by counsel. Hence the right of self-representation is conditioned on the "knowing and intelligent" relinquishment of the right to counsel.... Lest there be a case in which a defendant clearly asserts the right to defend pro se (so that the denial of the right would be error) without clearly waiving the right to counsel (so that there remains some question whether the waiver was knowing and intelligent), a trial judge should engage in a dialogue with such a defendant, explaining to him the consequences of defending pro se.

*Tuitt,* 822 F.2d at 174. The Supreme Court has not prescribed any "formula" or "script" to be read to a defendant who wants to forego counsel and represent himself; "[t]he information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar,* 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (citing *Zerbst,* 304 U.S. at 464, 58 S.Ct. 1019).[1]

---

**1.** Although there is no standardized *Faretta* litany, a number of federal circuits refer to the *Benchbook for U.S. District Court Judges,*

published by the Federal Judicial Center. The benchbook contains suggested questions and comments for use by a trial court on

The Texas Court of Criminal Appeals has indicated that a trial court need not admonish a defendant on the dangers of one form of hybrid representation, when he is "fully represented by counsel" although he "partially represented himself[.]" *See Maddox v. State*, 613 S.W.2d 275, 286 (Tex.Crim.App.1980) (op. on reh'g) (quoting *Phillips v. State*, 604 S.W.2d 904, 908 (Tex.Crim.App.1979)); *see also Houston v. State*, 201 S.W.3d 212, 219–20 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (hybrid representation). Some Texas courts of appeals have suggested this holding may apply to situations where the defendant's attorney remains in the case as standby counsel in the event the defendant wants to utilize the attorney's services.[2] Standby counsel is one consideration, but in our view *Faretta* admonishments should be given regardless of the appointment of standby counsel. *See McKaskle*, 465 U.S. at 176–88, 104 S.Ct. 944 (the role of standby counsel); *see also United States v. Davis*, 269 F.3d 514, 519–20 (5th Cir.2001) (Standby assistance of counsel does not satisfy the right to counsel.).

Although we do not regard appointment of standby counsel as relieving the trial court of the responsibility to admonish a defendant of the dangers of self-representation, the admonishment itself is not the ultimate issue before this Court. The State cannot force a defendant to have a lawyer. *See Faretta*, 422 U.S. at 820–21, 834, 95 S.Ct. 2525. A defendant has a constitutional right to represent himself. *Id.*, 422 U.S. at 819–20, 95 S.Ct. 2525. Grant made his choice to represent himself on the record. The ultimate issue this Court must determine is whether, under the particular facts and circumstances of this case, Grant made his decision voluntarily, knowingly, and intelligently. *See id.* at 835, 95 S.Ct. 2525.

Courts look at the totality of the particular facts and circumstances of a case in deciding whether the defendant's decision was knowing, intelligent, and vol-

---

conveying the pitfalls and disadvantages likely to be suffered by a *pro se* defendant when a defendant insists upon self-representation. *See United States v. Jones*, 452 F.3d 223, 229 n. 4 (3rd Cir.2006); *United States v. Davis*, 269 F.3d 514, 519 n. 12 (5th Cir.2001). "[A] failure to make a proper inquiry of a defendant who asks to represent himself, by itself, is not necessarily reversible error." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991). *But see also United States v. Virgil*, 444 F.3d 447, 457 n. 11 (5th Cir.2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 365, 166 L.Ed.2d 138, 75 U.S.L.W. 3169 (2006) ("We do not hold, however, that a defective waiver colloquy, as distinguished from a defective waiver, can never be subject to harmless error analysis.").

**2.** *Walker v. State*, 962 S.W.2d 124, 126–27 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Robertson v. State*, 934 S.W.2d 861, 865–66 (Tex.App.-Houston [14th Dist.] 1996, no pet.); *see also Jordan v. State*, No. 08–05–00286–CR, 2007 WL 1513996, at *5, 2007 Tex.App. Lexis 4118, at **13–14 (Tex.App.-El Paso 2007, no pet. h.) (not designated for publication); *Jones v. State*, No. 14–04–00950–CR, 2005 WL 2787306, at *1, 2005 Tex.App. Lexis 8844, at **2–3 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (not designated for publication); *Robinson v. State*, No. 05–04–00235–CR, 2005 WL 1670626, at *2, 2005 Tex.App. Lexis 5595, at **5–6 (Tex.App.-Dallas 2005, no pet.) (not designated for publication); *Anderson v. State*, 2–02–060–CR, 2003 WL 21101519, at *2, 2003 Tex.App. Lexis 4169, at **4–5 (Tex.App.-Fort Worth 2003, pet. ref'd) (not designated for publication); *Banks v. State*, No. 14–01–01196–CR, 2002 WL 31426993, at *1, 2002 Tex.App. Lexis 7894, at *3 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (not designated for publication); *Young v. State*, 05–98–00036–CR, 2000 WL 2676, at **1–2, 2000 Tex.App. Lexis 15, at **3–4 (Tex.App.-Dallas 2000, no pet.) (not designated for publication); *Ivory v. State*, No. 14–97–00421–CR, 1999 WL 548234, at **1–2, 1999 Tex.App. Lexis 5590, at **3–5 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (not designated for publication).

untary. *See Tovar*, 541 U.S. at 92, 124 S.Ct. 1379. The totality of the circumstances may include the defendant's education or sophistication, the complex or simple nature of the charge, and the stage of the proceeding. *See id.* at 88, 124 S.Ct. 1379. Other considerations include whether the defendant was represented by counsel before trial, whether standby counsel was appointed, and whether the defendant had prior experience with the criminal justice system. *See, e.g., United States v. Kimball*, 291 F.3d 726, 730 (11th Cir.2002); *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065–67 (11th Cir.1986).

In *United States v. Arlt*, 41 F.3d 516 (9th Cir.1994), the Court considered, along with the trial court's extensive discussion of the dangers of self-representation, the fact that the defendant's lawyers had advised him concerning his decision to represent himself. *Id.* at 521. "Although the practice of issuing specific warnings to defendants who wish to proceed pro se is a good way—perhaps the best way—to insure that the requirements of *Faretta* are met, it is not the *only* way." *United States v. Hafen*, 726 F.2d 21, 25–26 (1st Cir.1984) (noting additionally that counsel who had also represented appellant before trial, and who was in a better position than the trial court to assess appellant's mental state, "made no objection to the validity of appellant's decision to proceed pro se."). In *Dallio v. Spitzer*, 343 F.3d 553, 564 (2nd Cir.2003), the Court explained that "neither *Faretta's* holding nor its dictum clearly establishes that explicit warnings about the dangers and disadvantages of self-representation are a minimum constitutional

prerequisite to every valid waiver of the right to counsel[.]" The Seventh Circuit has noted that all a judge can and need do is "ensure that the defendant knows his rights and avoids hasty decisions." *United States v. Oreye*, 263 F.3d 669, 672 (7th Cir.2001). "If the judge exaggerates either the advantages of being represented or the disadvantages of self-representation, he will be accused of having put his thumb on the scale and prevented the defendant from making an informed choice." *Id.* (citation omitted).[3]

■ Grant was fully represented by appointed counsel at the time he made the decision to represent himself. Counsel's job, while he remained appointed counsel, included consulting with Grant on important decisions. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Presumably, the consultation would include warning Grant of the dangers inherent in invoking his right of self-representation. The court-appointed attorney, representing Grant in court when he announced his decision to represent himself in the trial, was ready to try the case. That counsel, with the assistance of another, thereafter served as standby counsel during trial, conferred with Grant during the trial, and is now Grant's appointed appellate counsel.

Grant's invocation of his right to self-representation was clear and unequivocal. This was not Grant's first experience with the criminal justice system. *See generally Kimball*, 291 F.3d at 730 (defendant's prior experience with criminal justice system).[4] His appointed counsel made no objection to the validity of Grant's decision

---

**3.** In *Oreye*, the Court also noted that although "standby counsel" was appointed, in fact the defendant "both had counsel and represented himself[,]" which the court called "hybrid representation" and disfavored; the Court noted that the defendant in those circum-

stances "had more representation than criminal defendants are entitled to." *Id.* at 673.

**4.** The record includes a 2004 judgment of conviction in a jury trial in Jefferson County for "Aggravated Robbery—a repeat felony offender."

to represent himself during the trial. *See Hafen*, 726 F.2d at 26.

■ Grant makes no argument on appeal that counsel was ineffective when Grant invoked his right to self-representation. He makes no claim the advice or representation counsel gave his client at any time before or after trial was somehow inadequate. Courts generally presume adequate representation by counsel. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999) (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

There is no indication of a conflict between Grant and his appointed counsel. He did not request a change in counsel. The record reflects that Grant consulted with standby counsel during the trial. He makes no complaints about those consultations. After the jury was selected, Grant asked the trial court "for a ruling on the motions that my co-counsel filed, Barlow," motions filed before trial.

No effort was made to persuade the trial court that Grant's decision was uninformed or involuntary. No motion for new trial was filed. The same appointed counsel now represents Grant in this appeal. Considering the totality of the particular facts and circumstances in this case, we conclude Grant's clear and unequivocal exercise of his constitutional right was an informed and voluntary decision. Issues one and two are overruled.

### THE SHACKLES

■ In issue three, Grant argues the trial court erred in having him shackled during trial. Grant specifically requested that he not be shackled. Immediately after Grant's request, the Court responded as follows:

THE COURT: Would you put the leg irons on, Mr. [Prosecutor], please. No, here's the deal. Your hands will be free,

okay? But the shock belt will be on; and as far as the chain on your feet, that's gonna be there, too.

GRANT: I'm gonna be restrained to the sitting position.

THE COURT: No, sir, you're gonna be able to stand. That's what I've been working on. I'm gonna see to it that you're gonna be able to stand up. I've got a skirt around that table where nobody can see any of that.

The Defendant: Standing stationary, though?

Efforts must be made to ensure the jury does not view the defendant in shackles; otherwise, a defendant's presumption of innocence is seriously infringed. *Long v. State*, 823 S.W.2d 259, 282 (Tex.Crim.App. 1991). Shackling without reason has constitutional implications. *See Ziolkowski v. State*, 223 S.W.3d 640, 644 (Tex.App.-Texarkana 2007, pet. ref'd); *see also* TEX. R.APP. P. 44.2(a). Shackling a defendant at trial is rarely called for, and in that event, the record must detail the grounds for the action. *See Cooks v. State*, 844 S.W.2d 697, 722 (Tex.Crim.App.1992) (citing *Long*, 823 S.W.2d at 282; *Marquez v. State*, 725 S.W.2d 217, 228 (Tex.Crim.App. 1987)). In responding to Grant's request, the trial court did not set out reasons in the record for shackling Grant. At a later point, the record does reveal Grant had assaulted a witness in the courtroom during an earlier criminal trial.

■ Courts have held shackling to be harmful error when the shackles are detectable to the jurors or when the use of restraints unduly restricts a defendant's ability to communicate with counsel. *Deck v. Missouri*, 544 U.S. 622, 630–31, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). The record reflects the trial judge took specific measures to prevent the jury from viewing Grant in shackles and did not put him in handcuffs. The trial court noted that

Grant would be able to stand, as well as sit, and the trial judge ordered a skirt be put around the table so that "nobody can see any of that."

Grant relies on *Wiseman v. State*, 223 S.W.3d 45 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). The instant case is distinguishable, because the record in *Wiseman* indicated Wiseman's shackles were visible. *Id.* at 51. The Court stated it could not determine that the jury did not hear or see the shackles and could not conclude that the error in shackling Wiseman did not contribute to his conviction or punishment. *Id.* Grant does not direct us to any point in the record reflecting the visibility of Grant's shackles to the jury, and we find nothing to indicate this occurred.[5] Grant does not argue the shackling interfered with his ability to communicate with stand-by counsel. The record does not reflect the jury saw the shackles. *See Canales v. State*, 98 S.W.3d 690, 698 (Tex.Crim.App.2003) (citing *Cooks v. State*, 844 S.W.2d 697, 722–23 (Tex.Crim.App. 1992)).

Grant also argues, in effect, that the shackles were unnecessary because the trial judge agreed that Grant would not present any problem during the trial. Grant's literal interpretation of the trial judge's remark is misplaced. The trial judge agreed Grant "would not be a problem" at trial because shackles and a stun belt restrained Grant. Grant also asserts the trial judge acknowledged Grant's self-representation would likely reveal the shackling to the jury. What the trial judge actually told Grant, out of the presence of the jury, was that Grant was in control of whether the jury learned of the restraints placed upon him.

Grant contends the shackles interfered with his self-representation, because he could not hand a statement, purportedly from the victim's mother, to one of the testifying officers during his cross-examination of the officer. The prosecutor objected to allowing Grant, without any predicate, to question the officer concerning a statement made by someone else. The trial court sustained that objection. Grant does not challenge that ruling. There is no indication the trial court's refusal to allow the witness to read the statement or to be handed the statement had anything to do with Grant and the shackles. We overrule issue three.

### THE OPENING STATEMENT

In issue four, Grant argues the trial court violated article 36.01 of the Texas Code of Criminal Procedure by forcing him to make his opening statement immediately following the State's opening statement. *See* TEX.CODE CRIM. PROC. ANN. Art. 36.01 (Vernon 2007). The following exchange occurred immediately following the prosecutor's opening statement.

> THE COURT: Mr. Grant, do you want to make a statement at this time?
>
> GRANT: I'll wait till right before I start presenting my witnesses.
>
> THE COURT: Okay. You can make it now or don't make one. Take your pick.

Article 36.01(a) sets out the order in which the trial shall proceed. A defendant is to make his opening statement—explaining the "nature of the defenses relied upon and the facts expected to be proved in their support"—at the conclusion of the State's evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 36.01 (Vernon 2007). Article 36.01(b) permits a different order: the defendant may choose to make his opening

---

**5.** In his brief, Grant appears to say the trial judge referred to the shackles in front of the jury. The record reflects the trial judge's comment about Grant's restraints was made outside the presence of the jury.

statement immediately after the State's opening statement, but the statute does not require him to do so. *See* TEX.CODE CRIM. PROC. ANN. art. 36.01(b) (Vernon 2007); *see Robles v. State,* 104 S.W.3d 649, 652 (Tex.App.-Houston [1st Dist.] 2003, no pet.). By requiring Grant to present his opening statement immediately after the State's opening statement, the trial court did not follow article 36.01. *See, e.g., Abney v. State,* 1 S.W.3d 271, 274–75 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd).

■ We review a statutory violation under the standard in Rule 44.2(b) of the Texas Rules of Appellate Procedure, and must determine whether a defendant's substantial right is adversely affected. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected when the trial court's error had a substantial effect or influence in determining the jury's verdict. *See King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

■ The trial court did not deny Grant the right to present an opening statement. Grant gave his opening statement, albeit at a time different from that to which he was entitled. Grant does not explain, nor can we tell from the record, how his statement would have been different if he had been allowed to make it at the opening of his evidence, or how the State's presentation of evidence would have resulted in his making a different opening statement than he made. Based on our review of the record, we cannot say that the trial court's error had a substantial effect or influence on the jury's verdict. Under the circumstances, we do not find the error requires a reversal of the judgment. *See Abney,* 1 S.W.3d at 274–75. Issue four is overruled.

## THE RECESS

In issues five and six, Grant asserts the trial court erred in refusing to afford him sufficient time to review the prior written statements of two of the State's witnesses. Grant does not cite to statements in the record. *See Roberts v. State,* 220 S.W.3d 521, 526–27 (Tex.Crim.App.2007)(procedural waiver).

■ Rule 615 of the Texas Rules of Evidence authorizes the trial court to order the production, after a witness has testified, of the witness's written statement relating to the matter testified. *See* TEX.R. EVID. 615 (formerly TEX.R.CRIM. EVID. 614). Section (d) of the rule provides as follows:

> (d) Recess for Examination of Statement.
>
> Upon delivery of the statement to the moving party, the court, upon application of that party, shall recess proceedings in the trial for a reasonable examination of such statement and for preparation for its use in the trial.

TEX.R. EVID. 615(d). Immediately prior to Grant's cross-examination of one witness, Grant asked the trial judge for a brief recess to look over her statement. The trial judge allowed Grant a few minutes for that purpose. Grant objected to the trial court's not recessing the trial for his review of the statement. Later, prior to the cross-examination of an officer, Grant asked the trial court for time to review the officer's seventeen-page offense report. The trial court gave Grant a recess for that purpose. When Grant asserted the time was inadequate, the trial court informed Grant that the twelve-minute recess was sufficient. Grant stated the length of the recess was five minutes.

■ Review of the time allotted by the trial court under Rule 615(d) is under an abuse of discretion standard. *See Camacho v. State,* 864 S.W.2d 524, 531 (Tex. Crim.App.1993). The record reveals the trial judge gave Grant time to review both documents. Grant then cross-examined

each witness. On this record, we do not find an abuse of discretion in the trial court's management of the time allotted for Grant's review of either document. *See generally Camacho,* 864 S.W.2d at 531; *see also Tutt v. State,* 940 S.W.2d 114, 122 (Tex.App.-Tyler 1996, pet. ref'd). Issues five and six are overruled.

The judgment of the trial court is affirmed.

AFFIRMED.