In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00152-CR
_____

WENDELL WAYNE HARRISON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 19-08-11334-CR

**MEMORANDUM OPINION**

Following a bench trial, Appellant Wendell Wayne Harrison ("Harrison") was convicted of being a felon in possession of a firearm, a third-degree felony. *See* Tex. Penal Code Ann. § 46.04(a)(2), (e). Harrison pleaded "true" to an enhancement, and the trial court sentenced him to ten years in the Institutional Division of the Texas Department of Criminal Justice. *See id.* § 12.34(a) (setting out third-degree felony punishment range). In a single issue, he contends that the trial court (1) failed to properly admonish him regarding the dangers of self-representation and (2) likewise

1

failed to inquire about his capacity to waive his right to counsel. *See* U.S. Const. amends. VI, XIV.

Finding no reversible error, we affirm the trial court's judgment.

## I. Background

In 2012, Harrison was convicted of possession of less than one gram of cocaine, a state jail felony. *See* Tex. Health & Safety Code Ann. § 481.115(c). He was sentenced to serve 220 days in the county jail. More than five years after Harrison's "release from confinement" for that conviction, Harrison was riding his motorcycle when County Precinct Four Deputy Constable Michael Aldrich stopped Harrison for having inoperable taillights on his motorcycle and expired vehicle registration. *See* Tex. Penal Code Ann. § 46.04(a)(2) (unlawful possession of a firearm by felon); *see also* Tex. Transp. Code Ann. §§ 502.040(a) (requiring registration), 547.322(a) (requiring taillamps for motor vehicles). During that traffic stop, Aldrich asked Harrison whether he was armed, and Harrison responded that he had a pistol. Aldrich then located a loaded handgun strapped in Harrison's shoulder holster. Aldrich then arrested Harrison for possessing a firearm at a location other than his residence. *See* Tex. Penal Code Ann. § 46.04(a)(2).

Since Harrison was indigent, the trial court first appointed an attorney to represent him in August 2019. In December 2019, the first attorney filed a Motion

to Withdraw, citing Harrison's insistence on unethical conduct. The trial court granted the motion and appointed a second attorney to represent Harrison.[1]

Harrison's second attorney represented him from December 2019 until September 2020, when she also moved to withdraw, citing "a conflict." In February 2021, the trial court appointed a third attorney, who moved for an examination to determine Harrison's competency to stand trial, stating that the attorney lacked confidence that Harrison "clearly understands the role of his attorney . . . [and] the meaning of a plea, dismissal, and/or trial." The trial court granted this motion and appointed Dr. Wendy Elliott to examine Harrison.

Dr. Elliott examined Harrison on June 17, 2021, and she filed her report with the trial court on July 6, 2021. She reported that she met with Harrison for "less than [five] minutes," because he refused to participate in the evaluation. According to Elliott's report, Harrison "raised his voice" during their brief meeting, he noted he was charged with "unlawful possession[,]" instructed her to "[t]ell my lawyer to get my case dismissed[,]" and referenced his "five-year anniversary."

Due to Harrison's decision not to participate in the evaluation, Elliott obtained information from jail records, interviews, a pro se letter, and from Harrison's third attorney. During Harrison's intake interview at the Montgomery County jail, he gave

---

[1]Harrison also filed a Pro Se Motion to Dismiss his first court-appointed attorney, referencing the attorney's alleged unethical conduct.

a history of service in the navy and treatment for anxiety and post-traumatic stress disorder, although he did not report any "active mental health concerns[]" at that time and has received no "mental health treatment during his current incarceration[.]" Elliott also noted that according to the jail's records, Harrison complied with his treatment for hypertension, has been housed in the jail's general population, has "no significant incidents," and "has been able to make appropriate requests on his own behalf[.]"

Although Elliott was unable "to thoroughly assess the nature of [Harrison's] thought content[,]" she noted that "he did not say anything suggesting overt delusional beliefs during that time. He also did not appear to be responding to internal stimuli." In her opinion,

> [Harrison's] statements about the unfairness of his arrest and incarceration and "his five-year anniversary" are not particularly reflective of mental illness; rather, they are likely more related to his history of legal involvement. He appears very certain about his understanding of the law, to the likely detriment of his interactions with his attorney. He will likely have problematic interactions with anyone who does not support his views on his case; however, this does not appear to be linked to his mental illness. Rather, it is linked to a misunderstanding and possibly a potentially challenging personality structure. There is no reason to believe he does not have basic factual knowledge of the system, such as the adversarial nature of the process. He also appears to understand the charges against him and is able to discuss a defense strategy, although it may be flawed. He has displayed an ability to behave appropriately during his incarceration and as such, likely has the capacity to do so in a court setting. He also displayed no symptoms of mental illness that would impair his ability to testify in his own case.

4

According to Elliott's report, Harrison's attorney stated that Harrison "ha[d] a history of legal contacts with convictions," thus "indicating he has the capacity to understand the legal system and apply his knowledge to his legal case."

Based on the limited information available to her and the presumption of legal competence to stand trial, Elliott determined that Harrison was competent. She did, however, include the caveat that "an evaluation of competency to stand trial addresses an individual's capacity to participate effectively in their legal case rather than their willingness to do so. It is likely Mr. Harrison will continue to be a difficult individual with which to interact and particularly defend."

Harrison's third attorney filed a motion to withdraw in September 2021, citing a "fundamental disagreement" with Harrison, counsel's inability "to effectively communicate with the Defendant in that the Defendant refuses to assist in his own defense." The trial court granted the motion and, in September 2021, appointed a fourth attorney to represent Harrison.

During the pretrial hearing, Harrison, his then-current [fourth] attorney, and the trial court discussed the charge, the penalty range, Harrison's understanding of the trial process, and the respective benefits and perils of attorney representation and self-representation. The court, Harrison, and his fourth attorney had the following discussion:

5

[DEFENSE COUNSEL]: The reason why I wanted to approach, Judge, is because today Mr. Harrison has instructed me not to speak and has instructed me that he wishes to speak for himself.

THE COURT: Okay.

[DEFENSE COUNSEL]: And so, I am -- I interpret that as his desire to proceed pro se. And so, I thought that the Court would need to admonish him on that.

THE COURT: Yes, sir.

MR. HARRISON: Yes. I didn't say I wanted pro se. I just -- if the court reporter is recording this, this is what I would like to have it on court report. My attorney do not want to defend me on my fifth anniversary defense. This is the disagreement that we have. And she was going a different direction. So, I didn't want her to say anything. I rather do the talking.

THE COURT: Okay.

MR. HARRISON: Not because I want to go pro se.

. . .

THE COURT: Okay. All right. I see. But you don't want [DEFENSE COUNSEL] to do anything as an attorney for you?

MR. HARRISON: No. Because she disagrees with my fifth anniversary argument -- defense. So, if that makes her feel uncomfortable, and -- how she wanted to defend me made me feel uncomfortable, so I told her best let me speak and I would rather give the evidence myself. Not saying go pro se. I mean, you know.

. . .

MR. HARRISON: And I didn't want to wait or delay this any longer. I have been in jail for over a year away from my family, away from my community with a charge that I'm not guilty of and I'm ready to bring the evidence forward today.

6

THE COURT: Okay. Well, if she can't act today as your attorney –
that's what I appointed her as.

. . .

THE COURT: Hold on one second. Hold on, Mr. Harrison. So, she'll
either have to -- she has a duty. She has a lot of ethical responsibilities.
And if I appoint her, she's got to represent you to the best of her ability.
Now, as far as disagreeing on things, she can't present anything that --
that would be a violation of the ethic rules or the rules of disciplinary
procedure for attorneys. She can let you testify. That's your choice if
you're going to testify or not. But she can't bring forth things that --
that she doesn't believe are true or those –

. . .

MR. HARRISON: Okay. So, I do want to testify for myself then. I just
seen another man plea -- plea his -- plea his own evidence right here
with his attorney not saying nothing. So, I would like to do the same
thing with that.

THE COURT: Okay.

[DEFENSE COUNSEL]: I'm not comfortable with that. My concern is
this is not a situation where there's a disagreement about whether Mr.
Harrison should testify. Mr. Harrison has instructed me not to speak.
And so, my concern is -- is that could be held to be ineffective and that
would frustrate the purposes of the trial. And so, if Mr. Harrison wishes
to speak for himself, that's his choice and his constitutional right to do
so. And I'm not here to stand in the way of doing that. But I believe that
the Court needs to advise Mr. Harrison proceeding pro se. And then I
should be released of responsibility for the case.

MR. HARRISON: I just want to speak for myself. I didn't -- I didn't
never assign her. You assigned her. And I want to get on with my case
today.

THE COURT: Okay. Well, you can't instruct her not to speak. What
she's saying is correct. That would be ineffective on her –

MR. HARRISON: But I also would like to say the reason she has -- is uncomfortable with it because she doesn't want to use my fifth anniversary defense in my case. And I feel more comfortable with that defense then [sic] any other defense.

THE COURT: Well, that doesn't sound like what she just explained. Is that you have ordered her not to speak.

MR. HARRISON: Because she disagrees – she didn't want to defend me –

THE COURT: Okay.

MR. HARRISON: -- on my fifth anniversary defense.

THE COURT: All right. So, here's the deal, Mr. Harrison, either [DEFENSE COUNSEL] -- and now she's feels uncomfortable representing you, but -- either your attorney would have to take full responsibility for all of this case, which includes that they would have to speak, or they don't at all and you can represent yourself. But I'm going to read you a few things and warning about that. Have you ever studied law?

MR. HARRISON: What, went to school for it?

THE COURT: Yes.

MR. HARRISON: No.

THE COURT: No. Have you ever represented yourself before in a criminal action?

MR. HARRISON: I testified for myself once.

THE COURT: Okay. But you weren't the attorney for yourself?

MR. HARRISON: No.

THE COURT: Are you aware of the maximum penalties for this charge?

MR. HARRISON: That's why I -- I would rather get all the evidence on record, so if I do need so I can appeal.

THE COURT: Is this a 2 to 10 or is there a habitual?

[THE STATE]: It's 2 to 20, Your Honor.

THE COURT: That's 2 to 20, that's the habitual.

[THE STATE]: Yes, Your Honor.

THE COURT: So, that's the punishment range is not less than 2 years and not more than 20 years in the Institutional Division of the Texas Department of Criminal Justice and, in addition, a fine not to exceed $10,000 may be assessed. Do you realize that if you represent yourself that you are on your own? As a judge I can't advise you. I can't tell you how you should try your case. I can't –

MR. HARRISON: Okay. Well, this is what I want to say. If she has something to say about it, and then I take the stand and contradict what she say, is that going to work with me or for me because I want to go to trial today.

. . .

THE COURT: But -- so -- and you're not familiar with the Texas Rules of Evidence or Criminal Procedure?

MR. HARRISON: What I'm going to do is present -- it's common sense. I'm just going to present the evidence and I want it on record just in case I am found guilty, I have appeals.

THE COURT: Okay. [DEFENSE COUNSEL], in your professional opinion, are you -- do you continue to ask to withdraw from this case feeling you may not be able to communicate effectively with Mr. Harrison?

[DEFENSE COUNSEL]: Yes, that is the case. However, my concern is is that Mr. Harrison does object to further delay. And I am, I believe at this point, his fourth attorney.

. . .

[DEFENSE COUNSEL]: I believe he's been previously represented by [THREE OTHER ATTORNEYS]. And so, I understand that he does not want further delay and that he wants to proceed. However, I do, to some extent, operate at the instruction of my client. And I have been instructed not to speak. And so, my sincere concern is that that would give rise to a claim for ineffective assistance of counsel. Mr. Harrison clearly has an opinion about how his defense should work. And that it would be unfair to me or any other attorney, and this problem is not going to solve itself by him having a different lawyer, in my professional opinion. I think we've learned. So, that's why I -- you know, he instructed me today that he wanted to speak for himself and that he wanted to argue the law that he wants to argue. And so, that to me necessarily means that he proceeds pro se.

. . .

THE COURT: Any response? So, [DEFENSE COUNSEL] is saying, basically, because of your instructions to her, she's not able to fulfill her responsibilities.

MR. HARRISON: Okay. Like, maybe my instructions was a little stiff. If she feel like –

THE COURT: Do not speak would be a little stiff.

MR. HARRISON: Huh?

THE COURT: But are you now telling her that you want her to represent you?

MR. HARRISON: Yes, she can represent me especially if I don't -- if I don't have to be reset. She can -- if she feel like I'm saying something wrong, I want her to pull me off to the side and we discuss it and then she can come back, if it's right then we can proceed with the case.

10

. . .

THE COURT: All right. So, [DEFENSE COUNSEL], do you still wish to withdraw?

[DEFENSE COUNSEL]: Well, what I wish is entirely different than what is the right thing to do for Mr. Harrison. My concern is that this problem does not solve itself with different counsel. I'm certainly willing, if the Court would grant us the opportunity to speak again in the jury room about his case –

THE COURT: Okay.

[DEFENSE COUNSEL]: -- after we have had this conference.

THE COURT: Okay.

[DEFENSE COUNSEL]: That perhaps we might be able to make a little bit of head way. But provided that I – you know, my concern is that Mr. Harrison's expectation of what -- as an attorney I will do and what the rules permit me to do are very different than what's reasonably likely to happen.

THE COURT: Okay. All right, Mr. Harrison.
So, as I'm hearing it now, you don't want her to withdraw? You still want her to represent you; is that correct?

MR. HARRISON: Yes.

THE COURT: And somehow to allow you to testify whenever that time would come?

MR. HARRISON: Yes.

THE COURT: Okay. Why don't we let you have a little bit of time to talk to [DEFENSE COUNSEL].

. . .

11

(SHORT RECESS)

. . .

THE COURT: Okay. So, tell me what we're doing. Will you continue to represent Mr. Harrison?

[DEFENSE COUNSEL]: Mr. Harrison has indicated that he is going to represent himself.

THE COURT: Okay.

[DEFENSE COUNSEL]: I believe the exact quote was: I'm going to represent myself anyway.

THE COURT: Oh, okay. All right. Then I – I have learned that you don't – you're not familiar with the rules of criminal procedure; is that correct?

MR. HARRISON: Yes.

THE COURT: You're not familiar with the Texas Rules of Evidence. You've not represented yourself before. I don't think that you know when and how to make proper objections, do you?

MR. HARRISON: No, not at all, Judge. But –

THE COURT: Well, what I'm getting ready to advise you is, in my opinion it would be far better for a trained attorney to represent you than for you to represent yourself. I think it's unwise for you to try to represent yourself because you're not familiar with the law. You're not familiar with rules of evidence or criminal procedure. And I will hold you to the same standards as the attorneys.

MR. HARRISON: Okay.

THE COURT: So, they are familiar with all of these things.

MR. HARRISON: This is what I don't quite understand. What's so unethical about representing me with my fifth anniversary as my defense? What's so unethical about that?

THE COURT: I don't know your case at all, Mr. Harrison.

MR. HARRISON: I have a gun case.

THE COURT: Okay.

MR. HARRISON: Felon in possession of a firearm. And I have my fifth anniversary. And how could I possess a gun -- I mean, if she is saying one thing –

THE COURT: Okay. Well, let's not talk about the facts of the case. I really need to know, first of all, if you're going to represent yourself. So, I am telling you that you're not familiar with these rules. I strongly urge you to not represent yourself. But in light of all that, are you still desiring to represent yourself and give up your right to have an attorney represent you?

MR. HARRISON: I mean, it doesn't make a difference if my attorney feel like it's unethical, when I have seen other cases, like with the three guys that ran down the black dude and killed him, they -- they -- their defense was of a defense. They was defending themselves. Now, that was crazy because it was three dudes with guns running after one black dude with no gun. But the attorney represented them on a defense case that they was defending themselves. So, what's so unethical about my defense if I'm saying I have my fifth anniversary and I believe my fifth anniversary clears me for possession of a firearm.

THE COURT: Okay. So, here's the question. Do you still, in light of the fact that you don't know the rules of evidence or criminal procedure and that I'll hold those same standards that I hold the trained attorneys to, do you still want to represent yourself?

MR. HARRISON: Okay. Well, this is what I want to ask.

THE COURT: Yes or no?

13

MR. HARRISON: It's just not black and white now. Because if she represents me in a way that I know that I'm uncomfortable with, can I come back and get on the stand?

THE COURT: You have the right to testify always.

MR. HARRISON: And bring up everything what I need to bring up for my appeal?

THE COURT: You have the right to testify on your own behalf.

MR. HARRISON: Okay. That's what I want to do.

THE COURT: But you also have the right to represent yourself if that's your decision. I strongly urge you –

MR. HARRISON: I feel like -- I feel like –

THE COURT: Hold on, Mr. Harrison, for one second. I strongly urge against that. But I need an answer from you now because it's a little after 10:00 and we need to -- we have another gentleman, also, whose case needs to be heard. So tell me.

MR. HARRISON: Okay. She can represent me but I would like to take the stand for myself, also.

THE COURT: So, [DEFENSE COUNSEL], I feel like were watching a tennis tournament or something. The ball is back in your court.

[DEFENSE COUNSEL]: Yes, Judge.

THE COURT: Have things deteriorated to the point that you can no longer represent him or are you willing to represent him?

[DEFENSE COUNSEL]: Judge, as his court appointed counsel, the question is not whether I want to represent my client. It's whether I believe that I can fulfill my constitutional duty.

THE COURT: Yes.

14

[DEFENSE COUSEL]: And my concern is that Mr. Harrison believes that my constitutional duty requires that I take certain actions that under the rules of professional responsibility I cannot take. And that's where I think that there is a fundamental breakdown is that I understand now that Mr. Harrison has -- at least I take from his statements here today, that he has walk back his instructions to me not to speak. But I don't know – I'm sort of at a loss. Because I'm willing to fulfill my constitutional duty to my client, but I understand that that is unacceptable to Mr. Harrison. And that's -- I think what I'm having a hard time adequately communicating is that what my -- I think he knows what my role is here today, obviously. He just disagrees with how the rules of professional responsibility require that I carry it out.

THE COURT: Okay.

[DEFENSE COUNSEL]: And that's where I'm struggling.

THE COURT: Okay. And you have to realize that if [DEFENSE COUNSEL], who is very familiar with those rules of professional conduct and responsibility -- that if she tells you that she cannot do something because it would violate one of those rules, she can't do that. Do you understand it?

MR. HARRISON: Not really. I have seen too many -- I have seen too many real cases on television.

. . .

MR. HARRISON: So, now, I'm, kind of, a little frustrated.

THE COURT: Okay. So, hold on. We're back to that preliminary question, which I've got to find out. Are you going to represent yourself or you willing to -- or do you want [DEFENSE COUNSEL] to help you?

MR. HARRISON: She could help.

THE COURT: Well, she would represent you. You don't have the right to a hybrid representation.

15

[DEFENSE COUNSEL]: Perhaps if you explained the rules to Mr. Harrison, would the Court -- if he went pro se, would the Court be appointing me as his standby counsel?

THE COURT: Are you willing to accept that responsibility?

[DEFENSE COUNSEL]: Well, Judge, I don't think I have a choice. That's part of my concern.

THE COURT: I can do that. In the past it has not worked out well.

[THE STATE]: And, Judge, at this point, Mr. Harrison has not clearly asked to proceed pro se. And the State knows that [DEFENSE COUNSEL] will adhere to both the law and the rules of professional responsibility in all things. If -- should Mr. Harrison choose to take actions that thwart his own defense, that's on him. But absent Mr. Harrison unequivocally saying that he wants to proceed pro se, it's the State's position that [DEFENSE COUNSEL] should remain as counsel.

[DEFENSE COUNSEL]: That's where I struggle, Judge. He's told me that he wishes to speak for himself and represent himself –

. . .

[DEFENSE COUNSEL]: And of course, I instruct all of my clients that it is their choice whether to testify in their own defense.

THE COURT: Okay. All right. So, then do you wish to represent yourself or do you wish to accept the representation by [DEFENSE COUNSEL]? Would she stay on as your attorney then?

MR. HARRISON: Well, she -- can she -- okay. She can protect my constitutional rights of the prosecutor if he has gone overboard?

THE COURT: That's what an attorney does. That's –

. . .

THE COURT: Okay. So, you do wish for [DEFENSE COUNSEL] to continue to represent you?

16

MR. HARRISON: Yes.

. . .

(HEARING RECESSED)

THE COURT: I understand there's more news on Mr. Harrison's case; is that correct?

[DEFENSE COUNSEL]: Judge, Mr. Harrison, indicated to me again that he wanted to represent himself. And that said he wanted to think about it, whether he wanted to represent himself or have new counsel appointed.

. . .

THE COURT: Okay. Come on up, Mr. Harrison. I've got to know now, sir, I have already advised you –

MR. HARRISON: Right.

THE COURT: -- of the dangers of representing yourself because of your lack of knowledge of rules of evidence, the –

MR. HARRISON: I'm really in a position where I feel like I'm being setup. But in -- my position, I'm being setup. I feel it. I'm going to have to go another – I'm going to have go with another attorney.

THE COURT: You're the fourth court appointed attorney?

[DEFENSE COUNSEL]: I believe so. I know that – I think [ATTORNEY ONE] was first. And then [ATTORNEY TWO] and then [ATTORNEY THREE] and now me.

THE COURT: Is that correct, Mr. Harrison?

MR. HARRISON: Yes.

. . .

17

THE COURT: Okay. Well, we are now – it's now a little before noon. And we have been wrestling with this issue all morning. And then we heard another hearing in the middle of it all. So, I need to know from you now if you are going to represent yourself or not?

MR. HARRISON: I'm going to have to represent myself.

THE COURT: Okay.

MR. HARRISON: I'm going to represent myself.

Harrison then requested certain paperwork from his former attorney, sought access to the law library to prepare for trial, and mentioned evidence he would need to support an appeal. The trial court and the attorneys granted all these requests to the extent of their ability. The State, like the trial court, warned Harrison that neither it nor the court could "provide him with legal advice on how to proceed on this case[,]" observing that "[s]ome of the questions that [Harrison is] asking today reference legal advice and how to proceed for trial. And these are questions that we would not be able to answer."

As shown by the bench conference set out above, Harrison wanted to defend himself by showing that his release from confinement for his felony conviction was more than five years before his gun possession charge. Harrison intended to pursue this defensive theory despite his attorneys' opinions this was legally and factually unsupported, thus unethical for an attorney to argue to the court.

18

When it became apparent that Harrison was considering representing himself, the trial court ensured that Harrison understood the felony charge against him, the two-to-twenty year punishment range he faced if convicted, and the need to understand and follow the rules of procedure and evidence, including when and how to make proper objections. In addition, the trial court asked about Harrison's legal training, his previous experience with self-representation, and on four occasions urged Harrison not to represent himself. The court also warned Harrison that despite his acknowledged lack of legal education, training, or experience, it would hold him to the same standard as an attorney. In addition, the court gave Harrison two opportunities to privately discuss the matter with his attorney so he could consider whether he wished to represent himself or continue being represented by counsel. When Harrison ultimately decided to represent himself, the trial court granted his request and released his attorney from her duty as Harrison's counsel.

At the time the trial court granted Harrison's request to represent himself, it had the benefit of Dr. Elliott's opinion that Harrison was mentally competent. The court also had letters that Harrison had written and motions he had filed. These communications with the trial court include explanations of Harrison's circumstances and motions for an examining trial, to dismiss appointed counsel, to dismiss the charge, to quash the indictment, to suppress evidence, to strike bond conditions, for a speedy trial, and a petition for habeas corpus. Harrison also moved

the trial court to set a reasonable appeal bond, and a Petition for Discretionary Review claiming that the indictment was incomplete and cited the incorrect statute. Some of these documents cite statutory and case authority and present legal arguments either urging Harrison's preferred defense or distinguishing his case from other cases.

Along with the "five-year defense" he advanced, Harrison argued at trial that he lacked any intent to break the law, and therefore lacked the requisite mens rea to support the criminal charge. He also contended that since he could legally possess a firearm in his home, it should be similarly legal for him to transport a firearm to his home from its purchase location. Harrison claimed he was doing so when Aldrich stopped him at 2:30 a.m.

## II. Standard of Review

Since whether a defendant is competent to proceed pro se presents a mixed question of law and fact turning on an evaluation of credibility and demeanor, we review the trial court's decision to permit Harrison to represent himself under an abuse of discretion standard. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010) (reviewing whether the defendant was mentally competent to conduct his own defense); *Cole v. State*, 590 S.W.3d 1, 5 (Tex. App.—Beaumont 2019, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Montgomery v. State*,

810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (citation omitted). We afford almost total deference to the trial court's rulings on mixed questions of law and fact turning on evaluations of credibility and demeanor. *See Chadwick*, 309 S.W.3d at 561.

Under that standard, we view the evidence in the light most favorable to the trial court's ruling. *See id.* (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Rodriguez v. State*, 491 S.W.3d 18, 28 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). When, as here, the trial court has not provided the parties with written findings, we imply findings we can reasonably infer from the evidence to support the trial court's ruling. *See Chadwick*, 309 S.W.3d at 561. On appeal, "the record must be sufficient for the reviewing court to make an assessment that appellant exercised his right to defend himself." *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988). To make this assessment, we evaluate the trial court's inquiry into a defendant's understanding of the practical disadvantages of his choice. *Id.*

### III. Analysis

#### A. Applicable Law

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. This right to counsel does not compel the accused to accept legal representation, but permits him to represent himself as long as his choice to do so is made (1) competently, (2)

21

knowingly and intelligently, and (3) voluntarily. *See Faretta v. California*, 422 U.S. 806, 834–36 (1975); *see also Godinez v. Moran*, 509 U.S. 389, 400–01 (1993); *Collier v. State*, 959 S.W.2d 621, 625–26 (Tex. Crim. App. 1997) (citations omitted).

A defendant is competent to waive counsel if he is competent to stand trial. *Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (citing *Godinez*, 509 U.S. at 396) (explaining that the standard for competence to choose self-representation is the same standard as competence to stand trial). This standard requires the defendant to have (1) "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and to have (2) "'a rational as well as factual understanding of the proceedings against him.'" *Id.* (citation omitted). *See also* Tex. Code Crim. Proc. Ann. art. 46B.003(a) (describing when a defendant is incompetent to stand trial). Defendants are presumed to be competent, and "[t]he focus is on whether the defendant is competent to choose to proceed *pro se*, not whether he is equipped to represent himself at trial." *Osorio-Lopez*, 663 S.W.3d at 757; *see also* Tex. Code Crim. Proc. Ann. art. 46B.003(b). "[T]he trial judge is in the best position to make the decision of whether a [] defendant is competent to proceed pro se." *Id.* (citing *Chadwick*, 309 S.W.3d at 563).

A defendant's decision to waive counsel and represent himself is made "knowingly and intelligently" if "made with a full understanding of the right to counsel, which is being abandoned as well as the dangers and disadvantages of self-

22

representation." *Cudjo v. State*, 345 S.W.3d 177, 183 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Moore v. State*, 999 S.W.2d 385, 396 n.5 (Tex. Crim. App. 1999)); *see also Cole*, 590 S.W.2d at 6. In determining whether the defendant knowingly and intelligently waived counsel, we consider the totality of the circumstances, including the defendant's background, experience, and conduct. *See Grant v. State*, 255 S.W.3d 642, 647–48 (Tex. App.—Beaumont 2007, no pet.); *see also Huggins v. State*, 674 S.W.3d 538, 541 (Tex. Crim. App. 2023) (explaining admonishments required depend on the circumstances, including the defendant's sophistication and complexity of the charge). Additional considerations may include a defendant's education or sophistication, the charge's simplicity, and the stage of the proceeding. *See Huggins*, 674 S.W.3d at 541; *Grant*, 255 S.W.3d 648. We may also consider whether counsel represented the defendant before trial, whether standby counsel was appointed, and whether a defendant had experience with the criminal justice system. *Grant*, 255 S.W.3d 648.

A defendant waives his right to counsel voluntarily if the waiver is not coerced. *See Prather v. State*, 238 S.W.3d 399, 403 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Coercion is defined as follows:

> "Coercion" means a threat, however communicated:
> (A) to commit an offense;
> (B) to inflict bodily injury in the future on the person threatened or another;
> (C) to accuse a person of any offense;

(D) to expose a person to hatred, contempt, or ridicule;

(E) to harm the credit or business repute of any person; or

(F) to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

Tex. Penal Code Ann. § 1.07(a)(9).

We view Harrison's appellate issue challenging his waiver of his right to counsel as presenting two distinct subsidiary arguments: (1) that the trial court did not adequately admonish him regarding the dangers of self-representation; and (2) that the trial court did not ensure that he had sufficient intelligence to demonstrate his competence to choose self-representation. We address each in turn.

## B. Trial Court's Admonishment

When permitting an accused to represent himself, the trial court need not establish a defendant's grasp of the intricacies of the rules of procedure and evidence but need only impress upon him "the dangers and disadvantages of self-representation," thus establishing in the record "'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (citation omitted). In other words, a criminal defendant need not have legal training or any level of education in order to "competently and intelligently" opt to represent himself. *See id.* at 836 (explaining that technical legal knowledge was irrelevant to an assessment of the defendant's knowing exercise of his right to defend himself). He must, however, be apprised of the dangers of proceeding without legal counsel. *See Blankenship*, 673

24

S.W.2d 578, 583–84 (Tex. Crim. App. 1984); *see also Huggins v. State*, 674 S.W.3d at 541. The trial court "shall advise the defendant of the nature of the charges . . . and the dangers and disadvantages of self-representation." Tex. Code Crim Proc. Ann. art. 1.051(g).

Our evaluation of the trial court's admonishment of Harrison reveals that the trial court satisfied its responsibility to ensure that Harrison understood both the nature of the charges against him and the hazards of foregoing his right to counsel. *See Huggins*, 674 S.W.3d at 541; *see also Grant*, 255 S.W.3d at 642, 647–48. Not only did the trial court ensure Harrison's understanding of the charge and its potential penalty range, the court inquired into Harrison's legal education and experience and repeatedly urged him not to represent himself because he was unfamiliar with the rules of procedure and evidence. *See Osorio-Lopez*, 663 S.W.3d at 757 (citation omitted); *see also Grant*, 255 S.W.3d at 642, 647–48.

The trial court further admonished him repeatedly that given his lack of legal training, proceeding pro se was ill advised. The court was not obliged to follow any "particular 'script' to assure itself that an accused who has asserted his right to self-representation does so with eyes open." *Osorio-Lopez*, 663 S.W.3d at 757 (citing *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991)). Therefore, the trial court adequately admonished Harrison of the charges against him, the possible penalty range, and the "dangers and disadvantages of self-representation," so the

25

record established that Harrison knew what he was doing, and his choice was made "'with eyes open.'" *Faretta*, 422 U.S. at 835 (citation omitted); *Huggins*, 674 S.W.3d at 541; *see also* Tex. Code Crim. Proc. Ann. art. 1.051(g).

**C. Competency to Choose Self-Representation**

Harrison has further argued that the trial court failed to ensure that he "had sufficient intelligence to demonstrate the capacity to waive his right to counsel." As noted above, the relevant inquiry is not whether Harrison possessed courtroom skill but is whether he was mentally competent to make the decision to represent himself. *See Faretta*, 422 U.S. at 836; *Osorio-Lopez*, 663 S.W.3d at 757; *see also Burton v. State*, 634 S.W.2d 692, 693–94 (Tex. Crim. App. 1982) (quoting the trial court's inquiry into the defendant's ability to represent himself and holding that a lack of legal education will not defeat a defendant's right to self-representation).

As we explained above, in assessing a defendant's competence to choose self-representation, the trial court considers the totality of the circumstances, including (1) the defendant's background, experience, and conduct; (2) the defendant's education and sophistication, (3) the simplicity of the charge, (4) the stage of the proceeding, (5) the defendant's experience with the criminal justice system, and (6) whether counsel represented the defendant before trial. *See Grant*, 255 S.W.3d at 647–48. Applying these criteria to this case reveals that although Harrison had no formal legal education and no training in the rules of courtroom procedure or

26

evidence, he was familiar with the criminal justice system, as shown by the prior convictions his third attorney mentioned to Elliott. Also, the charge against Harrison was straightforward: possession of a firearm by a convicted felon outside the felon's residence. *See* Tex. Penal Code Ann. § 46.04(a)(2). In addition, Harrison was represented by four different attorneys during the two and one-half years between his August 18, 2019 arrest and his March 30, 2022 decision to represent himself, and he had the demonstrated ability to perform legal research and to express himself to the court, as shown by his written communications with the court and his statements during the March 30, 2022 pretrial hearing. Although set for trial, Harrison was the one who insisted on proceeding without delay and requested a trial setting in less than thirty days. Moreover, Harrison, like every other defendant, is presumed competent absent contrary evidence, and Dr. Elliott also found Harrison to be competent. Tex. Code Crim. Proc. Ann. art. 46B.003(b); *see also Osorio-Lopez*, 663 S.W.3d at 757.

The record did not show that Harrison lacked the ability to consult with his attorney with a reasonable degree of rational understanding or that Harrison lacked a rational or factual understanding of the proceedings against him. Rather, the record as a whole supports the trial court's decision to allow Harrison to represent himself despite his lack of a formal legal education. Likewise, the record supports the trial

27

court's conclusion that Harrison was competent to choose self-representation. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(b).

**D. Voluntary Choice of Self-Representation**

As Harrison acknowledges in his brief, the record contains no evidence that he was coerced into waiving his right to counsel, and we have found no evidence in the record showing he was coerced. Accordingly, we need not further address this aspect of his waiver of counsel. *See* Tex. R. App. P. 47.1; *see also State v. Grohn*, 612 S.W.3d 78, 85 (Tex. App.—Beaumont 2020, pet. ref'd) (holding that there is no need to address issues unnecessary to the disposition of the case).

We overrule Harrison's sole appellate issue.

## IV. Conclusion

Having overruled Harrison's sole issue on appeal, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on June 30, 2023
Opinion Delivered August 14, 2024
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.